350       RHAWN *et al.* *v.* PEARCE *et al.*       [May

WILLIAM H. RHAWN *et al.*

*v.*

THOMAS A. PEARCE *et al.*

*Filed at Ottawa May 19, 1884.*

\* 1. CONFLICT OF LAWS—*insolvency laws of another State.* The courts of this State will not enforce the insolvent laws of another State by giving effect to a statutory assignment of the effects of a debtor residing in such other State, even as against an attaching creditor of the same State of the debtor.

2. Neither the law of another State or country, nor the adjudication of the courts thereof, by which trustees are appointed to take the property and effects of an insolvent debtor and distribute the proceeds, can have any extra-territorial effect. They are strictly local, and affect nothing more than they can reach. An assignment *in invitum*, by virtue of or under a foreign law, does not operate upon a debt or right of action as against a person in this State or suing here.

.3. SAME—*assignment under Insolvent Debtor's act—how far subject to equities.* Assignees or trustees of an insolvent debtor appointed by the courts under the provisions of a statute, take under the assignment, subject to every equity belonging to foreign creditors, and subject to the remedies provided by the laws of the foreign country where the debt is due.

4. Under a domestic attachment in a court in the State of Pennsylvania, trustees of the estate of the debtor were appointed by such court in accordance with a statute of that State, which statute vested them with all the estate of the debtor, including all debts and things in action from the date of such attachment. Creditors of such debtor, residents of the State of Pennsylvania, brought an action by attachment against him in this State, and garnisheed persons residents of this State, who were indebted to such non-resident debtor; and thereupon the trustees appointed in the State of Pennsylvania sought to defeat the attachment here by interpleading and claiming the debts garnisheed, by virtue of their appointment and the laws of that State: *Held,* that such trustees took subject to the remedies provided by the laws of this State, where the fund had its existence, and that the creditors suing here obtained the right to have such fund applied on their judgment.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding.

Mr. MELVILLE W. FULLER, for the appellants:

The comity of this State will permit an assignment in insolvency in another State, in pursuance of the laws of such other State, to have full effect upon the property of the insolvent, here, at the time of the assignment, except so far as it may conflict with the rights of our own citizens, or be inconsistent with the positive laws or public policy of Illinois. Story on Conflict of Laws, secs. 420, 929, 938; *Bank* v. *Erle,* 13 Pet. 589; Rorer on Inter-State Law, 138, 139; *Thurston* v. *Rosenfeld,* 42 Mo. 474; *Bethel* v. *Bethel,* 54 Ind. 428; *DeWolf* v. *Johnson,* 10 Wheat. 368.

The *situs* of a debt is the residence of the creditor,—not of the debtor. Wharton on Conflict of Laws, sec. 363; *Guillander* v. *Howell,* 35 N. Y. 657; *Greene* v. *Van Buskirk,* 7 Wall. 151; *Goodwin* v. *Holbrook,* 4 Wend. 379; *Kirtland* v. *Hotchkiss,* 100 U. S. 491; *Taylor* v. *Life Association,* 13 Fed. Rep. 496; *Wilkins* v. *Ellett,* 9 Wall. 740; *Goodlet* v. *Anderson,* 7 Lea, 286.

To sustain the proposition that an attaching creditor is precluded from contesting the validity of an assignment good by the law of the State of the domicile of such creditor, which is at the same time the domicile of the debtor, Mr. Wharton cites: *Hall* v. *Boardman,* 14 N. H. 38; *Hoag* v. *Hunt,* 21 id. 106; *Smith* v. *Brown,* 43 id. 44; *Dunlap* v. *Rogers,* 47 id. 287; *Kidder* v. *Tufts,* 48 id. 125; *Whipple* v. *Thayer,* 16 Pick. 25; *Richardson* v. *Forepaugh,* 7 Gray, 546; *May* v. *Wannemacher,* 111 Mass. 202; *Atwood* v. *Insurance Co.* 14 Conn. 555; *Plestero* v. *Abraham,* 1 Paige, 236; *Abraham* v. *Plestero,* 3 Wend. 540; *Moore* v. *Bonnell,* 2 Vroom, (N. J.) 90; *Richardson* v. *Leavitt,* 1 La. Ann. 430; *Einer* v. *Deynoodt,* 39 Mo. 69; *Thurston* v. *Rosenfeld,* 42 id. 474; *Warren* v. *Van Buskirk,* 35 N. Y. 658; *Ward* v. *Morrison,* 25 Vt. 593.

The interest of the equitable owner of a judgment can not be defeated by attachment against the nominal plaintiff and

garnishment of the judgment debtor. *Hodson* v. *McConnel*, 12 Ill. 170.

The general rule is, that an equitable assignment will prevail when the creditor has notice before suit. Drake on Attachments, sec. 527.

A creditor resident in the place in which an assignment is made is not permitted to assail it in a foreign jurisdiction. *Moore* v. *Bonnell*, 31 N. J. L. 97; *Einers* v. *Best*, 32 Mo. 240; *Richardson* v. *Forepaugh*, 7 Gray, 546; *Burlock* v. *Taylor*, 16 Pick. 335; *Smith* v. *Brown*, 43 N. H. 44.

Insolvent and bankrupt laws will be enforced in foreign jurisdictions as against creditors who reside in the State where the insolvent or bankrupt proceedings are had. *Einers* v. *Best*, 32 Mo. 240; *Milne* v. *Martin*, 6 Binn. 653; *Mullikin* v. *Auginbaugh*, 1 Pa. 117; *Lowery* v. *Hall*, 2 W. & S. 130; *Whipple* v. *Thayer*, 16 Pick. 25; *Hoyt* v. *Thompson*, 1 Seld. 339.

Mr. S. S. GREGORY, for the appellees:

The *situs* of the debt garnisheed was in this State, and as the laws of one State have no force outside the limits of the State where enacted, it is plain that the statutes of Pennsylvania could not operate in this State to vest in appellants title to the fund in controversy. *Booth* v. *Clark*, 17 How. 322; *Willetts* v. *Waite*, 25 N. Y. 577; *Hoyt* v. *Thompson*, 5 id. 320; *Osgood* v. *Maguire*, 64 id. 524; *Warren* v. *Union Nat. Bank*, 7 Phila. 166; Burrill on Assignments, sec. 303; *City Ins. Co.* v. *Commercial Bank*, 68 Ill. 348; Story on Conflict of Laws, 413; *Quincy Railroad Bridge Co.* v. *Adams County*, 88 Ill. 615; *Gardner et al.* v. *Commercial Nat. Bank*, 95 id. 298.

Non-resident creditors, or creditors resident of the State of the debtor, may enforce the collection of their demands by attachment of the debtor's effects in this State, notwithstanding an assignment of the debtor's effects by virtue of a statute of his State. Such creditors are protected the same as

resident creditors.   *Paine* v. *Lester,* 44 Conn. 196;   *Upton* v. *Hubbard,* 28 id. 275;  *Kidder* v. *Tufts,* 48 N. H. 121; *Abraham* v. *Plestero,* 3 Wend. 538;  *Johnson  et al.* v. *Hunt,* 23  id. 87; *Taylor* v. *Geary,* Kirby, 313;  *Wallace* v. *Patterson,* 2  Har. & McH. 463;  *Hibernia  Nat.  Bank* v. *Lacombe  et al.* 84  N.  Y. 367;  *Harrison* v. *Sterry,* 5 Cranch, 289;  *Greene* v. *Van Buskirk,* 7 Wall. 139.

Assignees in bankruptcy, or in insolvency, are in the same situation as the bankrupt himself in regard to foreign debts. They take subject to every equity belonging to foreign creditors, and subject to the remedies provided by the laws of the foreign country where the debt is due.   Story on Conflict of Laws, sec. 412.

The right of  a foreign creditor to sue in a State court the same as a resident creditor, is secured by the Federal constitution.   *Darris* v. *Pierce,* 7  Minn. 13;  *Corfield* v. *Coryell,* 4 Washb. 380;  *McFarland* v. *Butler,* 8 Minn. 116;  *Jackson* v. *Butler,* id. 117;  *Kincaid* v. *Francis,* Cooke, 49;  *Lemmon* v. *People,* 20  N.  Y. 607;  *Ward* v. *Maryland,* 12 Wall. 418; *Williams* v. *Bruffy,*  96  U. S. 176;  *Ducat* v. *Chicago,* 48  Ill. 172;  *Fellows* v. *Lewis,* 65 Ala. 343.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of assumpsit, by attachment, brought by appellees, against John Landenberger, a resident of Pennsylvania.   The writ was issued on the 17th day of January, 1883, and served on  John V. Farwell & Co., of Chicago, as garnishees, on the day following.   The garnishees answered, showing an indebtedness from them  to  Landenberger of $4259.91.   On the 13th of February judgment was rendered against Landenberger, and in his favor for the use of appellees, against the Farwells, for the sum admitted due by the answer.   At a subsequent day the judgment, on motion of appellants, was vacated, and on the 23d day of February

they filed an interpleader, in which they alleged that plaintiffs herein, Thomas A. Pearce and Martin Landenberger, have for many years last past been, and were at the time of the issuing of the writ of attachment in this case, and still are, citizens and residents of the State of Pennsylvania, of which State said John Landenberger, the principal defendant herein, was at said time when said writ of attachment was issued, and prior thereto, also a citizen; that on the 4th day of January, A. D. 1883, a certain writ of domestic attachment was sued out of the Court of Common Pleas No. 1, for the county of Philadelphia, and State of Pennsylvania, by the National Bank of the Republic, a corporation organized under the laws of Congress in that behalf, and located in the city of Philadelphia, in the State of Pennsylvania aforesaid, against the said John Landenberger, defendant, (who is the same John Landenberger who is defendant herein,) and Martin Landenberger, Jr., Charles H. Landenberger, William H. Carpenter and Thomas A. Pearce, garnishees, (which said Martin Landenberger, Jr., and Thomas A. Pearce, are plaintiffs herein,) which said writ of attachment was duly executed January 6, 1883; that thereupon such proceedings were had that on the 29th day of January, 1883, William H. Rhawn, Daniel B. Cummins and David Faust were, by the order and judgment of said court, duly in accordance with the statutes of Pennsylvania in that behalf, appointed trustees of the estate of said John Landenberger, under the writ of domestic attachment issued in the above case, and for the benefit of said John Landenberger's creditors, and duly qualified as such on the 30th day of January, 1883, who thereupon became vested with all the estate of said John Landenberger at the time of the issuing of said writ of domestic attachment, to-wit, on the 4th day of January, A. D. 1883, according to the laws of the State of Pennsylvania, including all debts and things in action due or belonging to said John Landenberger at the date of said attachment or afterward, with capacity to

sue therefor in their own names.    To the interpleader appellees interposed a general demurrer, which the court sustained, and rendered a judgment in their favor against the garnishees. From this judgment the interpleaders appealed to the Appellate Court, where the judgment of the Superior Court was affirmed, and the trustees, the interpleaders, bring the record here by appeal.

There is no controversy on this record in regard to the facts, and all matters of form are waived by stipulation. The record, therefore, presents nothing but a pure question of law for our decision.

The Pennsylvania statute, relied upon by the appellants, was made a part of the interpleader by stipulation, and where an attachment has been issued, as was done in Philadelphia against Landenberger, as set out in the interpleader, section 17 of the statute provides:    "On the return of the writ the court shall appoint three honest, discreet men, not being creditors of the defendant, to be trustees of the defendant." Section 23 declares:    "The trustees aforesaid shall be deemed to be vested with all the estate of the debtor at the time of issuing the said attachment, subject to all liens existing at that time; and it shall be their duty to take into their possession all the said estate, whether attached as aforesaid, or afterwards discovered by them, and all books, vouchers and papers relating to the same; and they shall be capable of suing for and recovering in their own names all the said estate, and all debts and things in action due or belonging to such debtor at the date of the attachment, or at any time thereafter."    Appellants having been appointed trustees under this statute, can they, as such, hold the property in question as against appellees, who are residents of the State of Pennsylvania, but who have brought their action in the courts of this State and garnisheed the fund?

It is not claimed that Landenberger made a voluntary assignment, and that the debt due from Farwell & Co. was

in that manner transferred to appellants, but they predicate their rights upon the statute of Pennsylvania, in connection with the order of the court in that State appointing them trustees. On the other hand, appellees claim as attaching creditors under and by virtue of the laws of this State. It is not denied in the argument that if appellees were residents of the State of Illinois they might hold the fund garnisheed as against the claim of appellants; but being residents of the State of Pennsylvania, which is also the residence of the debtor and appellants, the laws of that State must control the rights of the parties. We have been favored with able arguments in this case, in which many authorities have been cited and reviewed, but we have not the time, and it would extend this opinion to an unnecessary length, to cite and comment upon all the cases referred to in the argument. We shall therefore content ourselves with a reference to a few of the cases which, in our judgment, settle the law involved in the case.

If appellees had commenced their action in the courts of the State of Pennsylvania, there is no doubt but the proceedings set out in the interpleader would have been a complete bar to the action, and they would have been concluded by the laws of that State; but can the law of Pennsylvania, or the adjudication in that State under the law by which appellants were appointed trustees, have any operation here,—in other words, can the laws of Pennsylvania be extended beyond the limits of that State into the State of Illinois and control an action in the courts of this State brought by citizens of the former State?

A question similar in principle arose, at an early day, in New York, in *Abraham* v. *Plestero,* 3 Wend. 538, where a bankrupt had absconded from England, bringing certain property with him to New York, which was there attached by creditors resident of England, and the assignee, under a foreign commission of bankruptcy, sought the aid of our courts to enforce

his claims to the property. The right of the assignee to hold
the property was denied. In the decision of the case Senator
OLIVER said: "The question here is, whether the comity of
nations,—or, in other words, the enlightened and liberal
principles of jurisprudence,—require that we shall enforce
the Bankrupt law of a foreign nation by giving effect to a
statutory assignment. * * * On the whole, I subscribe
to the opinion of Ch. J. MARSHALL, in 5 Cranch, 289, that the
Bankrupt law of a foreign country is incapable of operating
a legal transfer of property in the United States. * * *
The obligation of a contract is universal, and may be enforced
wherever the contracting party may be found. Not so a
municipal law, which no country other than that which en-
acted it is bound to enforce." Senator STEBBINS said: "It
has been determined by the Supreme Court of the United
States, and by the State courts of Connecticut, Massachu-
setts, Pennsylvania, Maryland, and both the Carolinas, that
an assignment under the Bankrupt law of England does not
operate as a legal transfer of the personal property and choses
in action of the bankrupt, in this country." It will not be
necessary to quote further from the opinion of the court, but
upon an examination of the case it will be found that the
court decided, in clear and direct terms, that the laws of
England could not be given extra-territorial effect.

The doctrine of *Abraham* v. *Plestero* was affirmed in *John-
son* v. *Hunt,* 23 Wend. 87, in an elaborate opinion delivered
by Justice COWEN. Referring to the *Abraham case,* it is said:
"The current of the decision, as I understand it, is, that an
assignment *in invitum,* under the laws of one State or nation,
has no operation in another, even with respect to its own
citizens."

*Hibernia National Bank* v. *Lacombe et al.* 84 N. Y. 367,
(a case decided in the Court of Appeals in 1881,) is a case in
its facts quite similar to the case under consideration. The
question involved a contract between an attaching creditor

and commissioners in insolvency, all residents of Louisiana, as to certain funds in New York, and the court decided in favor of the attaching creditor. In the decision of the question it is said: "The remaining question relates to the claim made by Messrs. Lacombe and others, commissioners appointed by the court in Louisiana. Neither the law nor the adjudication under which they were appointed can have any operation here. They are strictly local, and affect nothing more than they can reach, for the rule, as we conceive, is well settled that an assignment by virtue of or under a foreign law, does not operate upon a debt or right of action as against a person in this State. The plaintiff, as we have seen, although a foreign creditor, is rightfully in our courts, pursuing a remedy given by our statutes. It may enforce that remedy to the same extent, and in the same manner, and with the same priority, as a citizen. Any other construction would make the permission of the statute a form without a benefit,—a formality, and not matter of substance,—a mere delusion. Once properly in court and accepted as a suitor, neither the law, nor court administering the law, will admit any distinction between the citizen of its own State and that of another. Before the law, and in its tribunals, there can be no preference of one over the other. (Citing *Abraham* v. *Plestero,* and *Johnson* v. *Hunt,* above commented on, and other cases.) The plaintiff, by the process of our courts, has acquired a right of which no principle of national comity requires us to deprive it."

In the case cited it was argued, as here, that the assignment made in the State of Louisiana was operative and binding between citizens of that State beyond the limits of the State, but the court rejected that view, and held that the attaching creditors, regardless of their residence, had the right to enforce the collection of a debt in the State of New York, upon an equal footing with persons resident in the State of New York. We regard this as the correct doctrine. Under

our laws the courts of this State are open alike to the citizens of every State for the enforcement of legal rights, and when a non-resident invokes the aid of our courts to enforce a legal right, inter-State comity does not demand that our courts should give the laws of another State extra-territorial effect here, and adopt their laws in the administration of justice. (See, also, *Paine* v. *Lester*, 44 Conn. 196, and *Kidder* v. *Tufts*, 48 N. H. 121.) Indeed, we have a constitutional guaranty "that the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States," and the Supreme Court of the United States, in *Greene* v. *Van Buskirk*, 7 Wall. 139, in discussing the question of comity, said: "But the right, under the constitution of the United States and the laws of Congress, which Green invoked to his aid, is not at all affected by the question of citizenship. We can not see why, if Illinois, in the spirit of enlightened legislation, concedes to the citizens of other States equal privileges with her own in her foreign attachment laws, that the judgment against the personal estate, located in her limits, of a non-resident debtor, which a citizen of New York lawfully obtained there, should have a different effect given to it under the provisions of the constitution and the law of Congress, because the debtor against whose property it was recovered happened also to be a citizen of New York."

We have been referred to cases decided in Massachusetts, among others *Burlock* v. *Taylor*, 16 Pick. 335, where it was held that an assignment of personal property by an insolvent debtor, in New York, which was valid under the laws of that State, is valid against a subsequent attachment by a citizen of New York of property in Massachusetts belonging to the debtor. While we recognize the high standing and ability of the court where these decisions were made, still we are not inclined to follow the rule there adopted, as we believe the rule established in New York and other States to be the better one, and one more likely to mete out justice to all parties

in such cases.   It will, however, be observed that the transfer relied upon in Massachusetts was a voluntary one, and not one by operation of law merely, as is the case here; and there are cases, as is *Willetts* v. *Waite*, 25 N. Y. 577, which hold that a distinction is to be drawn,—that where a transfer is claimed by operation of law merely, it is only operative where such law prevails.

We have also been referred to *Einers* v. *Best*, 32 Mo. 240, where the court decided that where the plaintiffs and defendants were citizens of Louisiana, and defendants had made an assignment of their property in accordance with the laws of that State, for the benefit of their creditors, and an assignee had been appointed to collect and distribute the assets of the insolvents, one of the creditors, a citizen of and residing in the same State, could not obtain a preference over the remaining creditors in his own State by process of attachment against the property and assets of the insolvent in this State. But while the decision is in favor of the view of appellants, at the same time the court quote, with approval, from Story on Conflict of Laws, 411, as follows:   "There is a marked distinction between a voluntary conveyance of property by the owner and a conveyance by mere operation of law in cases of bankruptcy *in invitum.*   Laws can not force the will, or compel any man to make a conveyance.   In place of a voluntary conveyance of the owner, all that the legislature of a country can do, when justice requires it, is to assume the disposition of his property *in invitum.*   But a statutable conveyance, made under the authority of any legislature, can not operate upon any property except that which is within its own territory."   If this quotation is held to be a correct view of the law, it would seem to follow that the statute of Pennsylvania did not operate upon the debt in this State, and it was liable to the garnishee process sued out by appellees; and while the court, for which we entertain a high

respect, arrives at a different conclusion, we are not inclined to follow the rule there adopted.

In Story on Conflict of Laws, sec. 414, the following rule is laid down in regard to an assignment like the one in question: "The most convenient and practical rule is, that statutable assignments, as to creditors, shall operate intra-territorially only. If our citizens conduct themselves according to our laws in regard to the property of their debtors found within our jurisdiction, it is reasonable that they should reap the fruits of their diligence, and not be sent to a foreign country to secure such a dividend of their debtor's effects as the foreign laws allow." In section 412, the author, in speaking of the manner in which the assignee takes the property, says: "They take the property under the assignment subject to every equity belonging to foreign creditors, and subject to the remedies provided by the laws of the foreign country where the debt is due."

Much has been said in the argument in reference to the *situs* of this debt, and it is contended that its *situs* was the residence of Landenberger in Philadelphia, to whom it was payable. Whether the debt was constructively within the State of Pennsylvania or not, at the time the insolvency proceedings were instituted, we do not regard of any particular moment. The parties owing the debt were residing in this State. The fund was here, and was liable, under the laws of this State, to the process of attachment, and the trustees in the State of Pennsylvania could only take, as declared by Story, subject to the remedies provided by the laws where the fund had an actual existence.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*