# UNITED STATES EXPRESS COMPANY ET AL.
## V.
# BYRON L. SMITH, RECEIVER.

*Insolvency—Bank—Funds in Another State—Assignment of Claim—Attachment—Petition by Receiver that Proceedings be Enjoined and Funds Released — Decisions of Other States—National Constitution, Art. 14, Sec. 1—Parties—Estoppel—*Res Adjudicata.

1. The pending of a receiver's petition that attaching creditors of his insolvent be required to discontinue proceedings in another State, and to release and pay over moneys in their hands, without a restraining order, has no effect on such suits.

2. Where the defendant is duly served with process, or appeared in the cause, the judgment of a court of a given State is conclusive for all purposes and is not open to inquiry upon the merits. If the judgment is conclusive in the State where it was pronounced, it is equally conclusive in all the courts of any other State, and the Legislature of another State is powerless to authorize its courts to open the merits and review the cause, or to enact that such a judgment shall not receive the same faith and credit that it had by law in the State where it was rendered.

3. A receiver employing counsel to enter the appearance of the insolvent in a given suit, and the procuring by him of the release of funds attached therein, through the offices of a surety company, operate to make him a party thereto.

4. The failure to present a given defense does not preserve the right to open the litigation in another forum. The principal of *res adjudicata* extends not only to questions of fact and of law, which were decided in a former suit, but also to the grounds of recovery or defense, which might have been, but were not presented.

5. It is the rule in New York that an assignee by operation of law can not supersede an attachment lien acquired by a creditor of an insolvent, although the assignment was made before the lien was acquired, the creditor and insolvent both being residents of the State.

[Opinion filed December 2, 1889.]

APPEAL from the Superior Court of Cook County; the Hon. HENRY M. SHEPARD, Judge, presiding.

Messrs. JAMES FRAKE and JAMES L. HIGH, for appellant United States Express Company.

U. S. Express Co. v. Smith.

Mr. E. A. Otis, for appellants Charles C. Boyles personally and as guardian, and the Merchants National Bank.

Messrs. Walker & Eddy, for appellee.

Garnett, J.   The Traders Bank of Chicago becoming insolvent, one Tallman, on October 2, 1888, filed his bill in the Superior Court, praying for the appointment of a receiver, and a dissolution of the corporation.   A receiver was on the same day appointed by the court, but refusing to serve, appellee was appointed in his stead the day after, immediately qualifying and entering upon the duties of the office.   By the order of appointment the receiver was invested (so far as it was in the power of the court to do so) with all the property and rights of action of the bank; its officers were directed to execute for the bank an assignment to him of all its effects and he was empowered to institute suits in law or equity for the recovery of any assets, claims or choses in action belonging to or due the bank.   No assignment to the receiver was executed by the bank or its officers.   At the time of the appointment of the receiver there was on deposit in the Seaboard National Bank, the Tradesmen's National Bank and the Continental National Bank, all of New York, to the credit of the Traders Bank, large sums of money.   The United States Express Company, a corporation organized under the laws of New York, the Merchants National Bank of Chicago, Charles C. Boyles personally, and Charles C. Boyles, guardian of Mary E. Gossage and others, minors, were severally creditors of the Traders Bank when the bill was filed.   The Merchants National Bank and Boyles personally and as guardian, assigned their claims to different parties residing in the State of New York, for the purpose of collection by attachment of the funds in possession of the New York banks, but the real interest in the claims still remained in such original creditors respectively.   When the bill was filed, and ever since, the Merchants National Bank was located at Chicago, and Boyles was then and ever since a resident thereof.   The express company for many years has

maintained an office in Chicago, employed an agent residing there, and transacted all necessary matters there pertaining to its express business. The assignees of the claims and the express company severally began suits in attachment in the Supreme Court of New York on October 8 and 9, 1888, levying their attachments upon the funds of the 'Traders Bank on deposit in the New York banks.

On October 29, 1888, the receiver filed his petition in the Superior Court, praying that the express company, the Merchants National Bank, and Boyles, personally, and as guardian, should be required to discontinue all proceedings in the New York attachments, release all moneys, assets and property attached by them belonging to the Traders Bank; to pay to the receiver any money or assets they had received or might receive, directly or indirectly, from such proceedings; and that they might be enjoined from further interfering with the receiver and the assets to which he was entitled. No injunction was issued or ordered until March 4, 1889, when the final order was entered granting the relief prayed for in the petition.

The respondents named in the petition answered in October and November, 1888, and on March 4, 1889, amended their answers, alleging that on or about January 5, 1889, the receiver employed counsel to defend the attachment suits, and caused an appearance to be entered therein in the name of the Traders Bank, but, in fact, in behalf of the receiver; that about January 8, 1889, the receiver caused an undertaking to be executed and filed by the American Surety Company, of New York, in the said attachment suits, for the purpose of procuring the release of the funds which had been attached in said suits and that the same were thereupon released and delivered to the receiver, amounting to about the sum of $25,000; that afterward, on January 23d and 29th final judgments were entered by the Supreme Court of New York in the attachment suits, in favor of the plaintiffs therein, severally, for the amounts of their claims; and that on February 1, 1889, the American Surety Company paid the express company $9,036.52, the amount of the judgment so rendered in favor of the latter.

The bonds given in each of the attachment suits recited the attachment; the appearance of the Traders Bank, that it was about to apply to the court for an order to discharge the same, and continued: "Now, therefore, the American Surety Company of New York * * * does hereby, in pursuance of the statute in such case made and provided, undertake that the defendant will, on demand, pay to the plaintiff the amount of any judgment which may be recovered in the action against the defendant," etc.

The facts stated in the amended answers to the receiver's petition are satisfactorily established, and, moreover, are tacitly admitted by appellees. Do they present a defense to the petition? Sercomb v. Catlin, 128 Ill. 556, is supposed by appellee to answer the question negatively.

The Superior Court of Cook County having appointed a receiver for the firm of Clapp & Davies, Sercomb, with notice of the fact, caused an attachment to be commenced in Washington, D. C., in favor of the Meriden Brittania Company, against Clapp & Davies, certain personal property of the defendants being seized by virtue of the writ. It was admitted that he could control the litigation, dismiss or continue the suit at his discretion. On petition of the receiver he was cited to show cause why he should not be attached for contempt in prosecuting the attachment. He demurred to the petition; the demurrer was overruled, and he elected to abide by the demurrer. He was then ordered to furnish proof to the court of having dismissed the suit, and in default thereof why he should not be attached for contempt. Failing to make proof of the dismissal, the receiver presented his petition praying that Sercomb show cause why he should not be attached for contempt, to which he also demurred, stood by his demurrer on its being overruled, and was ordered to be committed for contempt for refusal to dismiss the attachment. The object of the orders in that case were to prevent a judgment in another jurisdiction that would be final, not to set aside one already entered, and therein is the distinction between the two cases. We are not urged to depart from the rule in Sercomb's case, nor is it necessary to do so; but the doctrine

can not be pushed to the extent contended for by appellee without encroaching upon fundamental principles. The price of the advantages secured by the rule in that case is the exercise of that degree of superior diligence which intercepts the actions of the attachment creditor, and restrains the entry of final judgment in his behalf. The pending of the receiver's petition, without a restraining order, had no effect on the suits in New York. It could not be pleaded in abatement thereof (Allen v. Watt, 69 Ill. 655) much less in bar. Having allowed final judgment there appellee is now confronted with a provision of the national constitution, which requires full faith and credit to be given in each State to the public acts, records and judicial proceedings of every other State. Art. IV, Sec. 1. The earlier contention, that this section only required the admission in evidence in the courts of other States of such records, has long been abandoned, and judicial opinion is now uniform, that where the defendant is duly served with process, or appeared in the cause, the judgment is conclusive for all purposes, and is not open to inquiry upon the merits. If the judgment is conclusive in the State where it was pronounced, it is equally conclusive in all the courts of any other State. Even the Legislature of another State is powerless to authorize its courts to open the merits and review the cause, or to enact that such a judgment shall not receive the same faith and credit that by law it had in the State where it was rendered. Christmas v. Russell, 5 Wall. 290.

It may be true that any State can, by suitable legislation, remove that quality from its domestic judgments, which imports absolute verity, and leave all parties interested to inquire, by a new proceeding, into the merits of the case, without coming into collision with this constitutional prohibition. But in seeking for the faith and credit due in Illinois, to a New York judgment, where the defendant appeared in the cause, we need not inquire what effect is, or might be given in Illinois to its domestic judgments rendered under similar circumstances, because this section of the constitution does not give a judgment of one State merely like faith and credit in another State, as the domestic judgments of the latter State have in

its own borders. The question therefore is, what faith and credit would the judgment in question have in New York? If they can be questioned in that State, appellee has neglected to inform us in what court or tribunal it may be done. We must presume that an attempt to interfere with the judgment there would encounter the fate that a similar attempt by a New York receiver would meet here. That the attempt in our courts would avail nothing is manifest. Rhawn v. Pearce, 110 Ill. 350.

So far as the Traders Bank is concerned the judgments are final and conclusive and without any liability to revision, except upon appeal or writ of error to some court of the State of New York, having jurisdiction to correct errors of the court that committed them. Nor have they less effect against appellee. While he was not a party to them in name he in legal contemplation made himself a party thereto. He employed counsel to enter the appearance of the Traders Bank therein, and procured the surety company to enter into the obligation which secured the release, and surrender to himself of the fund detained by the attachment. That he thereby became a party to the suit and is estopped by the result of that litigation, seems to be plainly established by the authorities. Bennitt v. Star Mining Co., 119 Ill. 9.

The action taken by the receiver in the cases while pending in New York was in reality a submission of his rights to that tribunal; a place of repentance is now sought in a renewal of the litigation. The reason most relied upon for securing this favor is, that the New York court did not consider the receiver's right to the fund. That, however, is no better reason than could have been given if his rights had been presented and considered, and the decision had been adverse to him. What might have been should have been presented, and the neglect to do so does not preserve the right to open the litigation in another forum. The principle of *res adjudicata* extends not only to questions of fact and of law, which were decided in the former suit, but also to the grounds of recovery or defense, which might have been, but were not presented. Harmon v. The Auditor, etc., 123 Ill. 122.

The aspect of the case is not changed by the fact that appellee could not successfully have asserted his rights in the courts of New York. It is certainly the established rule in that State, that an assignee by operation of law can not supersede an attachment lien acquired by a creditor of the insolvent, although the assignment was made before the lien was acquired, the creditor and insolvent both being residents of the State where the assignment was effected. That appellee could not in any event have defended the New York suits successfully, is very plain. But that grows out of the fact that the rule in New York does not recognize the peculiar priority which courts of equity in Illinois endeavor to give to their receivers. Hibernian Bank v. Lacombe, 84 N. Y. 367. It is simply a difference in the ruling of the two jurisdictions. The same difference might appear in case a receiver appointed in New York should ask similar relief against an attaching creditor in Illinois. The prayer would be denied. Rhawn v. Pearce, *supra.*

Upon other questions the tribunals of different jurisdictions disagree. For example, the Supreme Court of this State holds that a mortgage securing a negotiable note is a chose in action, and when a foreclosure thereof is sought by a *bona fide* purchaser of the note before maturity, any defense will be admitted which would have been good against the mortgagee himself. Olds v. Cummings, 31 Ill. 188. The contrary doctrine prevails in the United States Courts. Carpenter v. Logan, 16 Wall. 271. After a *pro confesso* decree of foreclosure in the United States Circuit Court in favor of a *bona fide* holder of the note, secured by the mortgage, what would be the plight of a mortgagor applying to the Superior Court of Cook County to relieve the mortgaged property from the lien, on the ground that there was a defense to the note as against the payee, which the United States Court would not enforce against the purchaser? Manifestly his application would avail nothing, although if the question had not become *res adjudicata*, the relief would be granted. Petillon v. Noble, 73 Ill. 567. The case supposed, is parallel to that now in hand. The final analysis of appellee's argument pro-

duces the proposition, that as the New York court was governed by a rule that paid no respect to his supposed title, the judgment pronounced there, to which he was in law a party, should have no faith or credit here. If this is true no judgment is a finality so long as the courts of another State can be found to deny the principles upon which it was based. If the courts of this State may defy the constitutional prohibition in favor of receivers appointed here, the New York courts may do likewise in favor of receivers appointed there. Thus the provision for setting at rest questions once litigated is made a dead letter, and the wisest man can not tell when a law suit is ended. Not only is the Legislature denied the right to weaken the faith and credit due to judgments of other States, but any and all contrivances and makeshifts, any peculiar practice adopted by any court of law or equity, any favor to the rule of equality among creditors, having that effect, are equally forbidden. The leaning of equity toward equality in the distribution of insolvent estates is certainly commendable, but can not be encouraged at the expense of the supreme law of the land.

Sercomb's case is not authority for the doctrine that the appointment of a receiver operates *ipso facto* as a restraint upon domestic creditors, from pursuing the assets of the insolvent, which are beyond the jurisdiction of the appointing court, or that it is the duty of the court in all cases of that character to enjoin domestic creditors from such action. The first case is scarcely debatable, and as to the second I have no hesitation in saying that an injunction in such cases is entirely in the discretion of the court, and where it would operate to the injury of domestic creditors (leaving the fund to be entirely absorbed by non-resident creditors), all creditors should be left free to act; any other practice would conflict with the well known disposition to favor creditors of this State in preference to non-resident creditors. If these observations are sound, it is evident that the pendency of the receiver's petition and appearance of respondents thereto, imposed no restraint on appellants, and was no threat by the Superior Court (supposing a court capable of such a thing)

that an injunction would be granted, nor any notice that an order would be entered. The receiver after obtaining possession of the fund in dispute remained quiescent until the rights of the parties were adjudicated, when the victorious litigants appear in the Superior Court with the final order of a competent tribunal, are allowed by the court to set up the judgments, by sufficient pleadings, and are then told that the judgments are entitled to neither faith nor credit, because the receiver was intending to have the matter differently disposed of in the court which appointed him.

The case of the receiver derives no strength from his supposed want of qualification to become a party to the New York proceedings, as it is apparent from Hibernian Bank v. Lacombe, that he had a standing in court and could have presented and litigated whatever rights he had.

The position of appellants is not only consistent with Sercomb v. Catlin, but is supported by Rhawn v. Pearce, *supra*. The attempt in the latter case was made by an assignee *in invitum*, appointed by the Court of Common Pleas for the county of Philadelphia, Pennsylvania, to supersede an attachment levied in this State, by Pennsylvania creditors of the insolvent, after the appointment of the assignee. But it was held that the assignment had no operation in this State against the attachment, and after citing with approval Hibernian Bank v. Lacombe, *supra*, the court said: "We believe the rule established in New York and other States to be the better one, and one more likely to mete out justice to all parties in such cases." The court also held that it was of no moment whether the debt attached was constructively within the State of Pennsylvania or not, when the insolvency proceedings were instituted; that the fund was here and was liable to attachment under the laws of the State, and the trustees appointed in Pennsylvania could only take, subject to the remedies provided by law where the fund had an actual existence.

The decree is reversed and the cause remanded with directions to enter a decree in conformity with this opinion.

*Reversed and remanded with directions.*

MORAN, J.   With considerable doubt as to whether the receiver could bind the estate, or the court, by anything done by him in the matter in New York, without order of the court, I am, on the whole, disposed to concur in the foregoing opinion by Mr. Justice Garnett.

GARY, P. J.   I concur in the result reached by the opinion of Mr. Justice Garnett, but for the reason that the principle of the case of Sercomb v. Catlin does not cover this case. That case, as well as those followed by it, is based upon no superior equity in the creditors represented or receiver appointed in the suit here, but upon the jealousy of the court against encroachment upon, or disregard of, its power, jurisdiction or authority.   As was said by the Rhode Island court (13 R. I. 447), "We but echo the universal doctrine when we say that to the utmost limit of the jurisdiction and authority of this court, its orders shall neither be interfered with or disobeyed."   In the case here, no fund in which the bank ever had any interest, or which the receiver could ever touch, is involved.   In attachment suits in New York, brought by the appellants against the bank, a corporation, stranger to this suit, gave undertakings to pay the appellants the judgments they might obtain; that those undertakings were given at the instance of the receiver; that by means of them he was enabled to bring the fund attached, here that probably he must indemnify that corporation, furnish no grounds upon which a court here may, by indirection, discharge obligations voluntarily entered into in New York with full knowledge of all the circumstances, without compulsion, and not in the performance of any legal duty.

Among all the grounds stated in the treatises upon equity jurisprudence for the cancellation of contracts or agreements, there is no mention that for such a purpose, a bill founded upon the allegation that the complainant entered into the contract with the expectation that he would obtain the benefit of it, and not be bound by it, will lie.   If the appellants had, pending the application for an injunction, prosecuted their suits to judgments and satisfaction out of the fund of the bank, they might, in following the logic of Sercomb v. Catlin,

have been compelled to make restoration. Bispham Eq., Sec. 404. But that fund the receiver has got into his possession, and he has no equity to substitute the means by which he obtained it, with full knowledge of the binding, legal obligation thereby incurred, to the place occupied by the fund before he interfered.