## Corn Exchange Bank of Chicago, Charles B. Foote and Lewis E. Gary v. William F. Rockwell et al.

1. CREDITORS—*Foreign and Domestic—Preferences.*—The State owes a duty to its citizens to protect them against the removal from its jurisdiction of the property of insolvent foreign corporations, by foreign receivers thereof, until the just claims of its own citizens have been satisfied.

2. SAME—*Foreign Creditor Obtaining Judgment in Illinois.*—Where a foreign creditor brings suit and obtains a judgment in the courts of this State, files his bill and procures the appointment of a receiver, the courts of this State will afford him the same remedies as to a resident creditor.

3. RECEIVERS—*Foreign and Domestic.*—There is no difference in principle between a case where a foreign receiver claims against a domestic creditor, and one where the receiver is appointed in this State ancillary to or in aid of a foreign receivership.

Creditor's Bill.—Appeal from the Superior Court of Cook County; the Hon. WILLIAM G. EWING, Judge, presiding. Heard in this court at the March term, 1895. Reversed with directions. Opinion filed May 16, 1895.

## Statement of the Case.

The F. J. Kaldenberg Company was a New York corporation, with its principal office and place of business in New York City, and having a branch store and business in the city of Chicago.

Frederick J. Kaldenberg was its president.

On April 18, 1893, said Frederick J. Kaldenberg filed his bill against said corporation, in the Superior Court of Cook County, setting forth the nature of the business of said corporation, and the places, including Chicago, where it was carried on, and that its stock of goods in Chicago was of the value of $15,000; that the corporation had failed, and was insolvent and unable to pay its debts, of which several thousand dollars were owing in Chicago; that suits had been begun against it, and in order to protect its property for the benefit of its creditors and stockholders, the complainant, with three other persons, constituting a majority of its trustees, instituted proceedings in the Supreme Court of New York for the appointment of a receiver, the distribution of its property and assets among its creditors and stockholders, and for its dissolution and the winding up of its affairs; that on April 7, 1893, a receiver of the property of said corporation was appointed by said New York court, who qualified and at once took possession of the property and assets of the corporation in New York and wherever the same could be reached by him, and that he, by an agent duly authorized by him, took actual possession of the store, property and effects in Chicago; that on April 14, 1893, while said receiver was so in possession by his agent, of the Chicago property, the appellant bank sued out a writ of attachment upon an indebtedness of $1,000, and the sheriff of Cook county, under the attachment writ issued in said suit, immediately took possession of said store and property in Chicago, and holds the same, and excludes therefrom the agent of said receiver; that other creditors have threatened to bring attachment suits and levy upon the same property, etc.; and prayed for the appointment of a receiver, " and that such receiver, when appointed, shall be authorized, at

the proper time, to account to and act in conjunction with the receiver heretofore appointed by the Supreme Court of New York, to the end that the affairs of said corporation may be finally and properly wound up by that court."

The corporation alone was made a party defendant, and, on the same day the bill was filed, it entered its appearance and consented to the appointment of a receiver, which was at once done and the receiver at once qualified.

By the order of appointment, the receiver was appointed "for all of the property and effects of the said defendant company situated and being within the State of Illinois;" and it was therein further ordered that the sheriff of Cook county, with the consent of the attaching creditor, should turn over to the receiver so appointed all the property seized by him, on April 14, 1893, "upon the condition that all property so turned over or the proceeds thereof, shall be in the receiver's hands in all respects, and as fully, and to the same extent subject to the lien and hold of the attachment begun by Foote in the Circuit Court, as if said property had not been turned over, the intent hereof being that said attachment and the lien and hold thereof shall follow said property into said receiver's hands."

On the same day the order was entered, consent was given by the attaching creditor, and the attached property was turned over by the sheriff to the receiver.

It seems that the attachment suit mentioned in the order as having been begun by Foote (one of the appellants), was the same suit mentioned in the bill as having been begun by the appellant bank, the bank being the real owner of the claim upon which the suit was based.

The banking business of the corporation, in Chicago, had been done with the appellant bank, and said attachment suit was upon a check for $1,000, which had been deposited with the bank in the usual course of business, and payment refused.

The appellant bank also held, at the same time, four notes aggregating $8,000, made by the said Kaldenberg corporation, payable to the order of the bank for loans or

renewals of loans, all of which notes matured in April and May, 1893.

On June 17, 1893, an attachment suit against the corporation was begun on said four notes, in the name of the appellant, Lewis E. Gary, to whom the bank had assigned the notes without consideration, for that purpose, and on the same day the writ was delivered to the sheriff, who made return thereon, omitting signature, as follows:

" No property of the within named defendants found in my county subject to levy this 19th day of June, 1893. All of the property that was attached by me on former attachment writ was delivered to the Chicago Title and Trust Company, receiver, on or about the 14th day of June, 1893. The within named defendants not found in my county."

It is conceded that it was an error of the sheriff to state the 14th day of June as the date when the property was turned over, and that it should have been stated as the 14th day of April.

Both attachment suits were in the Circuit Court; service in each case was had by publication; the two causes were consolidated and judgment by default against the corporation was entered July 14, 1893, in the Foote suit for $1,014, and in the Gary suit $8,103 and costs in each, and reciting *inter alia* in the judgment as abstracted as follows:

" That after the levy of the Foote writ the Superior Court appointed a receiver, as hereinabove stated, and did at the same time enter the order upon the sheriff hereinabove stated, to turn over the attached property, and that the sheriff did so do; finding that said two attachments were the only ones against said defendant in that court, and that the judgments therein, being rendered together at the same term were, by the attachment act, placed on the same footing as to satisfaction out of proceeds of property attached; and ordering that the plaintiffs be given, and thereby giving them permission and authority, by such proceedings in the Superior Court as they might think proper, to obtain satisfaction of said judgments out of the property turned over by the sheriff to the receiver, or its proceeds;

and that said plaintiffs share *pro rata* in any moneys realized by such proceedings."

A petition by appellants Foote and Gary, subsequently amended by joining the appellant bank therein, was filed in this cause, setting up the last recited judgments and the previous proceedings in the attachment suits and in this cause, and showing that the debts upon which said attachments and judgments were based, were contracted at Chicago in the course of the banking business done by the corporation with the bank, in reliance by the bank upon the corporation's assets in its branch business at Chicago, and setting up that the bank is an Illinois corporation doing business in Chicago; that in equity the debts have always belonged to the bank, and that appellants are the only local creditors of the corporation, and claiming that the receivership here is of no validity against appellants' rights as Illinois creditors, and is a mere device to protect the New York receiver and the corporation against creditors in this State; and claiming all of the fund realized from the sale of the assets in Illinois, or so much thereof as may be necessary to satisfy said judgments.

The petition of the appellants was answered by the receiver, and most, if not all, of the foreign creditors who had proved claims against the estate in the hands of the receiver, and upon a final hearing and decree, claims by creditors of the corporation, not residents of Illinois, and mostly of New York, exceeding $125,000, were allowed and ordered to prorate in the balance in the hands of the receiver, along with the appellant on its judgment in Gary's name for $8,103, and one other claim of an Illinois creditor amounting to $12. The appellant Foote was, by the decree, given priority over the other creditors to the extent of the judgment in his name belonging to the bank, amounting with costs to $1,045.15.

By the receiver's report he held $8,021.79, less receiver's and attorney's compensation, as the net proceeds arising from a sale of all the property in Illinois for distribution.

This appeal is from that decree.

Dupee, Judah & Willard, attorneys for appellants.

Appellees' Brief, John W. Burdette, Cratty Bros., Maclaren, Jarvis & Cleveland, Attorneys.

Parties interested or having rights in a fund or property in the custody of a court of equity for administration must seek their remedy in that forum. Creditors can not, after equity acquires jurisdiction of the fund for administration by any proceeding at law, acquire preferences. Russell v. The Chicago Trust & Savings Bank, 139 Ill. 538; Roseboom et al. v. Whittaker et al., 132 Ill. 81; Plume & Atwood Mfg. Co. v. Caldwell, 136 Ill. 163; Am. & Eng. Enc. of Law, Vol. 20, page 138.

The courts of this State are open alike to resident and non-resident creditors. The law treats all creditors alike who invoke the action of our courts irrespective of residence. Rhawn v. Pearce, 110 Ill. 350, and cases cited; Holbrook v. Ford, 39 N. E. Rep. 1091; Hibernia Nat. Bank v. Lacombe, 84 N. Y. 367.

Mr. Justice Shepard delivered the opinion of the Court.

We have heretofore held that the State owes a duty to its citizens to protect them against the removal from our jurisdiction of the property here located of insolvent foreign corporations, by foreign receivers thereof, until the just claims of its own citizens have been satisfied. Hunt v. Gilbert, 54 Ill. App. 491.

It was said in Heyer v. Alexander, 108 Ill. 385:

" It is not just or fair that creditors in this State should be compelled to go to a foreign State to receive a *pro rata* share of the debtor's property, when they, perhaps, extended credit upon the faith of the debtor's property in this State and to which they looked for payment." See, also, Holbrook v. Ford, 153 Ill. 633.

We discern no difference in principle between a case where a foreign receiver claims against a domestic creditor, and one where the receiver is appointed in this State ancillary to or in aid of the foreign receivership.

The case of Holbrook v. Ford, *supra*, certainly does not lay down any such distinction. There, it is true, the judgment creditor and complainant in the creditor's bill under which the receiver was appointed, was "a resident of New York, but he brought suit and obtained judgment in Illinois, and filed his bill and procured the appointment of a receiver here." (See opinion of the court.) And in such a case our courts are open to afford the same remedies to non-resident as to resident creditors.

In this case there was a New York corporation with its principal office and business in New York, a branch office and business and assets and creditors here, a receivership in New York, of that corporation, obtained upon the application there of the president of the corporation, who was also the complainant in the bill for a receiver here, and three of his associate managers of the corporation; a taking possession here by the foreign receiver of all the property in Illinois belonging to the corporation, a dispossession of such receiver by the sheriff of this county under an attachment by a creditor citizen of this State, a bill filed here by the same president of the corporation, not upon a judgment obtained here, nor upon any allegation even of being a creditor of the corporation, but solely upon allegations of the insolvency of the corporation, the appointment of a receiver in New York, the taking possession of the property here by such receiver, his dispossession by the sheriff by an attaching creditor here, the threats of other suits by other creditors here, and the disability of protecting creditors generally and stockholders, and praying that such receiver when appointed shall account to and act in conjunction with the New York receiver to the end that the corporation's affairs may be finally wound up and settled by the New York court.

The receiver appointed here, upon the bill so filed here, was limited by the order of appointment to assets in Illinois, and, as shown by the report of the receiver, such assets consisted of over $22,000 in property seized by a domestic attaching creditor and turned over by the sheriff, besides accounts receivable from which were realized over $1,000.

After realizing upon all assets here and paying expenses allowed by the court, the receiver here will have but about $7,000 to distribute. A little over $1,000 of that balance will go to the domestic creditor who attached in the interest of the appellant bank before the receiver was appointed here, and the balance will be distributed, according to the decree, among New York creditors whose claims for over $125,000 have been proved up here, and the two other domestic creditors, one for $1,200, and the other, the attaching creditor, Gary, for the use of the appellant bank for $8,103, whose claims were proved up.

That such a receivership as that under the bill in this case was merely ancillary or auxiliary to the New York receivership, is what was said in Nolbrook v. Ford, *supra*. And that it was a mere device to attain indirectly what could not be attained directly, by swallowing up the assets here which had furnished the reliance upon which the corporation had obtained credit here, in favor of the New York receiver, seems very plain from the mere statement of facts.

We do not think it can be done successfully. The decree was erroneous in requiring the appellants, Gary and the bank, to prorate with the foreign creditors. What is left is insufficient to pay their claims in full, and it should have been given to them. It is not necessary to discuss any of the other questions argued, except to say that it is immaterial whether the Gary judgment was regularly rendered or not. It is not disputed but the correct amount was included in the judgment, and it was properly allowable as a claim against the estate in the hands of the receiver, whether reduced to judgment or not. The court had jurisdiction under the bill that was filed to adjudicate claims and distribute assets.

The decree of the Superior Court will therefore be reversed with directions to order the receiver, after satisfying the Foote judgment, to distribute the assets remaining in its hands *pro rata* among the domestic creditors whose claims were allowed, in preference to the foreign creditors.

If anything remains over, which we suppose will not be

the case, then to distribute such residue *pro rata* among the foreign creditors, or direct it to be accounted for to the New York receiver as may seem proper. Reversed with directions.

OPINION BY MR. PRESIDING JUSTICE WATERMAN.

We are presented in this case, not with an application by a foreign receiver to take assets of an insolvent out of this State, but with the simple question of whether citizens of the State of New York, when they come into the courts of this State and appeal to them for relief, are entitled to all the remedies and rights of citizens of this State, or whether our courts will discriminate against foreign creditors in favor of citizens of this State.

Time was when a " stranger in a strange land," the foreigner, the alien, was looked upon as a dangerous creature, to be watched and plundered. At the common law an alien could not acquire title to real estate by descent or by mere operation of law; an alien had no inheritable blood through which title could be deduced. By the statutes of Henry the Eighth, alien artificers were prohibited from working for themselves in the kingdom of England, and all leases of houses and shops to them in England were declared void. They were allowed to trade, but at the custom house had to pay higher duties than other people. In these " good old times " the courts discriminated against the foreign creditor.

It was then believed that wealth could be acquired by prohibiting the export of gold and silver, and that food could be made abundant and cheap by limiting the price at which grain should be sold.

In more enlightened days in civilized countries, most if not all of these laws, the product of ignorance and barbarism, have been swept away, and the foreigner—the alien—is a being no longer either feared or discriminated against.

The Supreme Court of this State, in Rhawn v. Pierce et al., 110 Ill. 350, speaking of the case of Hibernian National Bank v. Lacomber et al., 84 N. Y. 367, said that in that case " the attaching creditors, regardless of their residence,

had the right to enforce the collection of a debt in the State of New York upon an equal footing with persons resident in the State of New York." We regard this as the correct doctrine.

Under our laws, the courts of this State are open alike to the citizens of every State for the enforcement of legal rights, and when a non-resident invokes the aid of our courts to enforce a legal right, interstate comity does not demand that our courts should give the laws of another State extra-territorial effect here, and adopt their laws in the administration of justice.

And in Holbrook v. Ford, 39 N. E. 1091, the court said: " But non-resident creditors have the same right to pursue the remedies prescribed by our laws for the collection of debts as resident creditors. Once properly in court and accepted as a suitor, neither the law, nor court administering the law, will admit any distinction between the citizen of its own State and another." See, also, Chaffee v. Fourth National Bank, 71 Me. 514; Sturtevant v. Armsby Co., New Hampshire, 1891; Reynolds v. Alden, 136 U. S. 350; Wilcox v. Silver Plate Co., 123 Ind. 477; Sheldon v. Blauvelt, 29 S. C. 453; Stricker v. Tingham, 35 Ga. 176.

If the Superior Court has any doubt—it would seem there can be none—that the Illinois creditors will be permitted to have and share in the proceeding in New York equally, *pro rata*, with New York creditors, it might retain the fund until such question is determined; but otherwise all creditors, foreign and domestic, should share *pro rata* in the fund to be distributed here.