## Orson Smith v. George Berz, Coroner, etc.

### Gen. No. 12,031.

1. FOREIGN RECEIVER OR ASSIGNEE—*rights of, to property in Illinois.* A foreign receiver, or a foreign assignee whose office and power are statutory, and to whom no voluntary conveyance has been made, cannot effectively convey real estate in Illinois, nor can he obtain the assistance of the courts of Illinois to secure the possession of chattels in this jurisdiction. If he has given no notice of his claim to debtors of the estate residing in Illinois, before a garnishment is made, he cannot defeat such garnishment by attaching creditors, either resident or non-resident, of Illinois. But if without the aid of the Illinois courts he has taken actual possession of chattels in Illinois, or has notified debtors of the estate residing in Illinois of his claim, before an attachment is made, his claim (if it results from laws or proceedings not contrary to the public policy of Illinois) will be recognized and protected against such attachment unless the attachment is by a citizen of Illinois. As distinguished from a receiver or assignee purely statutory and appointed *in invitum*, a foreign voluntary assignee, for the benefit of creditors, may have, in proper cases, the aid of Illinois courts to secure possession and control of property in Illinois conveyed to him, and, as against foreign attaching creditors, he will be protected in his right to all the property in Illinois of which he does obtain possession. But neither a voluntary assignee, nor one purely statutory, from a foreign jurisdiction, nor a receiver appointed by a foreign court, can successfully hold property of which he has not obtained possession in the jurisdiction appointing him, against attaching creditors of the insolvent estate who are citizens of Illinois.

2. CROSS-ERRORS—*effect given to, where assignments of, are sustained.* Where cross-errors are assigned to the admission of evidence the Appellate Court will not, if it holds such evidence incompetent, treat such evidence as though not in the record and affirm a judgment otherwise to be reversed, but will give effect to the sustaining of such cross-errors by instructions to the trial court.

3. ATTACHMENT NOTICE—*effect of.* An attachment notice mailed in due course with proper address raises a *prima facie* presumption of reception.

4. ATTACHMENT PROCEEDING—*burden of establishing fraudulent*

*character of.* Where the replevin of goods is sought to be justified by virtue of attachment proceedings, the burden of establishing that the same were fraudulent in character, is upon the party asserting such claim.

Action of debt upon replevin bond. Appeal from the Circuit Court of Cook County; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in this court at the October term, 1904. Reversed and remanded. Opinion filed October 16, 1905. Rehearing denied October 30, 1905.

**Statement by the Court.** This is an appeal from a judgment of the Circuit Court of Cook county for damages of $2,000 on a replevin bond. The judgment was rendered in July, 1904, against the appellant, Orson Smith, who was surety on the bond and was alone served with process, the principal, one Francis Lettellier, although sued with appellant, not having been found in the jurisdiction. The bond of Lettellier as principal and Smith as surety was given to the appellee as coroner in October, 1897, on the institution of a suit in replevin by said Lettellier in the Circuit Court of Cook county against the sheriff of Cook county for certain property in said bond described and was for the penal sum of $2,000. The coroner executed the replevin writ and delivered the property to Lettellier. The replevin suit was dismissed without a trial on the merits in December, 1899, for failure of Lettellier to prosecute and a *retorno habendo* ordered. The property not having been returned, suit was brought on the replevin bond by the coroner for the use of the sheriff, who held the goods when replevied.

To the declaration in ordinary form for replevin the defendant Smith first pleaded *non est factum* and secondly that the plaintiff should recover but nominal damages because the goods taken were the property of Lettellier, the replevinor, and that the replevin suit was dismissed without a hearing on the merits.

The plaintiff joined issue on the first plea and to the second replied double, in the first replication traversing and in the second alleging that on October 4, 1897, the Gilliam Manufacturing Company, a West Virginia corporation, sued

out an attachment writ for $1,605.24 against the Hamilton Kenwood Cycle Co. in the Circuit Court of Cook county, directing the sheriff of Cook county to attach the property of the Hamilton Kenwood Cycle Co. to satisfy the writ, and that it was in pursuance thereof that the property in question was taken, and averring that the property so taken was the property of the Hamilton Kenwood Cycle Co. and was subject to said writ of attachment. A rejoinder traversing all the allegations of the second replication was filed by the plaintiff.

Later two additional pleas were filed by the defendant. The first of these additional pleas sets out a resolution of the Hamilton Kenwood Cycle Company on June 17, 1897, authorizing the execution of a certain chattel mortgage to one J. Frederick Baars, trustee, under certain specified trusts, the net purport of which was that he should, out of the proceeds of the property covered by the mortgage, pay the creditors of the Cycle Company in an arrangement of priority according to several classes: first, the National Bank of Grand Rapids and four other creditors; second, twenty-three enumerated creditors; third, nine other creditors, among them the Gilliam Manufacturing Co. Said mortgage purported to cover all the personal property of the Cycle Company, and specified with other things "all goods, bicycles and materials for the same in transit, and all goods and bicycles sent out on commission or otherwise wheresoever the same may be; also all additions to the personal property mentioned which may be made from time to time by the said first party during the life of the mortgage and all articles procured to replace any of said property and said goods." The plea sets out the chattel mortgage in full and avers that it was duly executed on June 17, 1897, by the Cycle Company through its treasurer and general manager; that said Baars accepted the trust and that the mortgage and acceptance were in accordance with the statutes of Michigan filed with the city clerk of the city of Grand Rapids, Michigan, where the company had its principal office and its residence. It also avers that on or about June 21, 1897, the trustee took

actual possession of all property of the Cycle Company covered by said chattel mortgage in the State of Michigan and employed Jones & Jennings, agents of the Cycle Company in Chicago, Illinois, to hold possession of the property in Chicago for the trustee and to account to him therefor; that soon after the trustee had shipped from Chicago to himself at Grand Rapids nearly all the property then in Chicago and that none of the property levied on by the sheriff under the attachment issued October 4, 1897, at the suit of the Gilliam Manufacturing Company against the Cycle Company was in Chicago on June 19, 1897, but was either then in Grand Rapids or was manufactured after that date out of material then in hand at Grand Rapids; that the attachment was levied upon goods subject to the mortgage and taken possession of by the trustee at Grand Rapids and sent by him afterwards from Grand Rapids to Chicago to be sold in that market; that the safe levied on was purchased by the trustee after the mortgage was given; that on August 18, 1897, the trustee filed a bill in chancery in the Circuit Court of Kent county at Grand Rapids, Michigan, to foreclose the chattel mortgage and for the appointment of a receiver to take charge of the property; that thereupon Thomas J. O'Brien was by the court appointed receiver, and authorized to sell the property at public or private sale; that the said receiver then took immediate possession of said property and shipped from time to time a considerable part of it to Chicago for sale, and that some of this property so shipped was levied on by the attachment writ of the Gilliam Manufacturing Co.; that on September 8, 1897, a final decree in the foreclosure suit was entered directing the receiver to sell the property remaining unsold at public sale; that on September 10, 1897, the receiver published in the daily newspapers of Grand Rapids notice of a public sale to take place on September 18, 1897, and posted notices thereof and sent by mail, postage prepaid, notice to all creditors of the Cycle Co., including the Gilliam Manufacturing Company; that on September 18, 1897, the property was sold by the receiver pursuant to the notice and was bid off by Letellier for $15,000; that

on September 20, 1897, the sale was confirmed by the court; that on September 21, 1897, the agents in Chicago were notified of the sale to Lettellier and were employed by Lettellier as his agents, and thereafter accounted and reported to Lettellier as owner for all sales made; that afterwards all sales and transactions had in relation to the property were by Lettellier as purchaser, owner, and possessor of said property.

As a conclusion, the plea avers that the title of Lettellier was paramount to that of the Gilliam Manufacturing Company, a West Virginia corporation, and that the said Gilliam Company had no title to said property nor any right of possession thereto nor acquired any by the levy of its writ of attachment on October 4, 1897.

The second of the additional pleas sets up the same matter as the first, and stated as its conclusion that by virtue of the purchase at the receiver's sale, Lettellier became invested with and succeeded to all the right, title and interest of the trustee, under the laws of Michigan, and that his lien was paramount to the one obtained by the Gilliam Manufacturing Company by its levy.

To these additional pleas the plaintiff filed replications traversing each statement of the pleas and concluding to the country, and also replications alleging that even if the safe was as alleged purchased by the trustee, the possession of it was, when taken by the attachment, in the Cycle Company and that it was subject to said attachment, that even if the allegations of said pleas were true, yet nevertheless when the said attachment writ was levied the said goods and chattels were in the apparent and ostensible possession of the Cycle Company, and that said company was then to all appearances and ostensibly conducting and carrying on the sale of said goods and chattels in Chicago in its own name, that the plaintiff had no notice to the contrary before taking said goods and chattels and that said property was subject to said attachment.

Further replications averred that even if the allegations of the pleas were true, yet the authorization, execution and

recording of the chattel mortgage, together with the fore-closure and the sale of the property thereunder, were executed and carried out without consideration between the parties thereto and with the fraudulent intent of hindering the plaintiff in the collection of its debt against the Cycle Company and were fraudulent and void against the plaintiff, and that Lettellier had notice thereof, wherefore the goods levied on were as against the plaintiff at the time when so taken the property of the Cycle Company and subject to attachment against it.

The defendant in the action filed rejoinders to these replications, denying that the safe involved was in the possession of the Cycle Company at the time alleged in the replication, denying that when taken by the attachment writ, the property was in the apparent possession of the Cycle Company, or that the Cycle Company was apparently carrying on its sale in its own name, and denying that the transactions involving the mortgage proceedings were with a fraudulent intention of hindering and delaying the plaintiff.

On the issues raised by these pleadings a trial was had before a jury, in April 1904, and the jury first returned a verdict for the plaintiff, finding the debt $2,000 and assessing the damages at the sum of $1,650 with interest at 5% per annum from October 11, 1897, to April 26, 1904, and also returned special findings on certain questions submitted to them as follows:

The question: "What was the value of the property replevied?", they answered "$1,760."

The question: "Did the receiver ship the property in question or any part thereof to Jones and Jennings in Chicago?", they answered "No."

The trial judge refused to receive the general verdict (the ad damnum in the writ and declaration being only $2,000), and instructed the jury that the verdict should not exceed $2,000. Whereupon the jury retired and returned a verdict for the plaintiff finding the debt to be $2,000, and assessing damages at $2,000.

The court then denied a motion for a new trial made by

the defendant and a motion to arrest judgment. Judgment being entered on the verdict the present appeal is prosecuted. Errors have been assigned and argued involving the admission and exclusion of evidence and the giving and refusal of certain instructions and asserting the verdict to be against the weight of the evidence. Complaint is also made of the refusal to submit at the instance of the defendant certain special questions of fact to the jury. These matters will be discussed in the opinion so far as seems necessary.

Cross errors have been assigned by the plaintiff, who asks, however, for an affirmance of the judgment.

GREGORY, POPPENHUSEN & McNAB, for appellant.

HELMER, MOULTON & WHITMAN, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The questions raised by this appeal are sufficiently disclosed by the statement of the pleadings prefixed to this opinion.

Although (erroneously as we think) the papers and proceedings in the attachment suit of the Gilliam Manufacturing Company, a West Virginia corporation, against the Hamilton Kenwood Cycle Company were excluded from evidence by the trial judge, it stands admitted by the pleadings (having been although first in a rejoinder denied, afterward in a plea alleged, by the defendant, as well as set up by the plaintiff in replications) that such an attachment suit was begun on October 4, 1897.

The main issue in the case is whether the levy of that attachment gave to the attaching creditor a right to the goods attached superior to that proven by the defendant in this suit to have existed in the plaintiff in the replevin suit from which this action on the bond resulted.

The plaintiff in a replevin suit must of course rely on his own right to possession and not on the weakness of his adversary's claim, and it may have been for that reason that the learned trial judge held the attachment proceedings im-

material. A right of possession, however, that may be good in a claimant against some persons may not be against others, but must yield to some superior lien or interest. In the case at bar, although the attachment proceedings were excluded as immaterial and incompetent, we think it could not be reasonably urged that Lettellier, the replevin plaintiff, could not have sustained a replevin suit against third parties, for example, who had stolen the goods in question. Some claim of right the proceedings in Grand Rapids set out in the pleadings and the actions and events connected therewith in Chicago, gave him. As before stated, the question in this case is: was such right superior to that gained by the Gilliam Manufacturing Company by its attachment of October 4, 1897?

The trial court, as the record shows, proceeded on the theory that as Lettellier was a purchaser at a receiver's sale, his right was not so superior as to property not located in Michigan at the time of the appointment of the receiver by a court of that State or not thereafter brought into Michigan so that the receiver might take possession of it. Instruction 7 was given, and (although perhaps objections to its form might have been superadded reasons) instruction 37 was probably refused, by the trial judge on this theory. The jury found, as the special part of their verdict indicated, that the receiver did not ship any part of the property in question to Chicago. This was practically tantamount to a finding that it had never been in his possession in Michigan, for the evidence clearly showed such a course of dealing between Grand Rapids and Chicago as to this property before it was attached that if it had so been in his possession in Michigan it must have been he who shipped a large part of it to Chicago. It follows, therefore, that if they regarded the instruction of the court and entertained the opinion expressed concerning the relations in fact of the receiver to this property the jury could not have returned a different verdict. Whether their special finding of fact was not against the weight of the evidence will hereafter be considered. We are here concerned with the question whether instruction 7

correctly stated the law. If it did not, the error was one
demanding a reversal, for under it, although the jury might
have believed that Baars, the trustee under the mortgage,
after he had taken possession of the property covered by it
and before the appointment of the receiver, had sent goods
to Chicago, or that a change of possession from the company
to Lettellier of goods originally in Chicago had been effected
by some other means than shipment of them to Michigan and
reshipment to Chicago after the appointment of the receiver,
(both which hypotheses were possible under the evidence)
yet for the value of such goods they must have found a ver-
dict for the plaintiff.

The appellee contends that instruction 7 correctly states
the law of Illinois. He argues that although the chattel
mortgage of the Cycle Company to Baars was a voluntary
conveyance, its foreclosure and the appointment of Mr.
O'Brien as receiver was a proceeding *in invitum,* that a re-
ceiver appointed in a proceeding *in invitum* has no right to
act beyond the jurisdiction appointing him, or that at all
events any action ostensibly taken by him in Illinois entirely
outside such jurisdiction can avail nothing against an at-
taching creditor, resident or non-resident, who chooses to
ignore it. Unless therefore the goods attached had been in
Michigan, during the receiver's tenure of office, he could
not have conveyed any right to them to Lettellier. This
view seems to have been adopted by the trial judge and to
have controlled his rulings in the cause. We cannot agree
with it.

The Illinois cases relied on by counsel to support it, such
as Rhawn v. Pearce, 110 Ill., 350; May v. First National
Bank, 122 Ill., 551; Woodward v. Brooks, 128 Ill., 222;
Townsend v. Coxe et al., 151 Ill., 62, do not, we think, es-
tablish a rule of such strictness, and when they are examined
in connection with Heyer v. Alexander, 108 Ill., 385; C. M.
& St. P. Ry. Co. v. Keokuk, 108 Ill., 317; Consolidated Tank
Line Co. v. Collier, 148 Ill., 259, the following doctrine is
in our opinion found to be the law of Illinois.

A foreign receiver, or a foreign assignee whose office

and power are statutory, and to whom no voluntary convey-
ance has been made, cannot effectively convey real estate
in Illinois, nor can he obtain the assistance of the courts of
Illinois to secure the possession of chattels in this jurisdic-
tion.   If he has given no notice of his claim to debtors of
the estate residing in Illinois, before a garnishment is made,
he cannot defeat such garnishment by attaching creditors,
either resident or non-resident, of Illinois.   But if without
the aid of the Illinois courts he has taken actual possession
of chattels in Illinois, or has notified debtors of the estate re-
siding in Illinois of his claim, before an attachment is made,
his claim (if it results from laws or proceedings not contrary
to the public policy of Illinois) will be recognized and pro-
tected against such attachment unless the attachment is by a
citizen of Illinois.   As distinguished from a receiver or as-
signee purely statutory and appointed *in invitum,* a foreign
voluntary assignee, for the benefit of creditors, may have, in
proper cases, the aid of Illinois courts to secure possession
and control of property in Illinois conveyed to him, and, as
against foreign attaching creditors, he will be protected in
his right to all the property in Illinois of which he does ob-
tain possession.   But neither a voluntary assignee, nor one
purely statutory, from a foreign jurisdiction, nor a receiver
appointed by a foreign court, can successfully hold property
of which he has not obtained possession in the jurisdiction
appointing him, against attaching creditors of the insolvent
estate who are citizens of Illinois.   If this be the law of
Illinois, it conforms, we think, to that of many other states
as shown by their reported decisions.   With it, instruction
7 in the case at bar is not in accord, for that instruction took
altogether from the jury the question whether Lettellier or
the receiver from whose sale he derived title had taken
possession in Illinois of goods not in Michigan at or after the
receiver's appointment.   If such possession had been taken,
then according to the law as we hold it to be, Lettellier's
claim would prevail over that of a foreign attaching creditor.

We do not, however, think this is the only reason for hold-
ing the instruction erroneous.   It proceeds, as does the argu-

ment of counsel in support of it, entirely on the assumption that the appointment of O'Brien as receiver was a proceeding *in invitum,* and that he held, under the action of the court in appointing him and the action of the parties after his appointment, only the right of possession which he would have held had he been appointed in a purely hostile proceeding between the parties to the suit. We view the transactions differently. It is apparent that the Hamilton Kenwood Cycle Co. on June 19, 1897, being in a financially embarrassed condition, desired so to arrange its affairs and assets that while the assets should reach as far as possible toward the extinguishment of its indebtedness, there should in any event be preferred five certain creditors, chief among which was the National City Bank of Grand Rapids. To accomplish this result the company made a mortgage of its chattels to one Baars as trustee, Baars being cashier of the bank. In addition to this it assigned to Baars the accounts and claims due to it, at least certain of them—apparently all. All this was to secure certain debts arranged in classes of priority, the five creditors to be primarily preferred constituting the first class. The mortgage provided that so long as the trustee considered it advisable the property covered by it might remain in the possession of the Cycle Company which might carry on its business as usual, but that whenever the trustee deemed the interests of his beneficiaries demanded he should have the right to take immediate possession and the right of foreclosure. The intent and substance of the transactions are shown by the fact that immediately after due record of the mortgage Baars took steps towards the possession of all the property mortgaged. It is contended by appellee that such steps did not constitute in law the actual reduction to possession of the goods in Chicago, a position we will hereafter advert to; but the intent to take legal possession immediately cannot be disputed, nor can it be disputed that such taking of possession was not opposed by the mortgagor company but on the contrary was by it assisted and expedited.

After two months in which Baars was the ostensible di-

recting head of the business, he filed a bill to foreclose the chattel mortgage, and in it asked for the appointment of a receiver both of the chattels unsold pending the foreclosure sale and of the accounts assigned and not yet collected, to preserve the one and collect the other and dispose of both as might be directed by the court. To this bill the Cycle Company answered admitting every allegation and thus in effect joining in the prayer of the bill. Thereupon the court, reciting that it did so on the motion of the complainant, counsel for the defendant appearing, and "not opposing," appointed as receiver T. J. O'Brien (a lawyer of Grand Rapids), "he being recommended therefor by the parties to the suit." The trustee Baars then immediately turned over to the receiver, or certainly attempted to do so, all the property which had come into his possession as mortgagee and did this with the evident assent of the former managers and directors of the company. Three weeks later, by a consent decree (it being so expressly recited therein) it was ordered by the court that the mortgaged goods remaining unsold should be sold "by or under the direction of the receiver * * * or by a Circuit Court Commissioner," etc., and the proceeds applied to pay the mortgage indebtedness. Accordingly, the receiver, in the language of his report, "charged by the solicitor for the complainant with the execution of said decretal order," sold at auction to Francis Lettellier as the highest bidder, all the property for $15,000. The sale was at once in another consent decree confirmed by the court and the property ordered delivered by the receiver to Lettellier and it was so done, certainly so far as the receiver could do it, while the $15,000 was paid to Baars for distribution among the five primarily preferred creditors.

If we look at the substance rather than the shadow of things, we must consider these proceedings much more like a voluntary assignment with preferences by the Cycle Company, than a hostile *"in invitum"* sequestration of its property by a foreign court into the hands of a foreign receiver. Such a voluntary assignment, whatever its validity had it been made in Illinois, was valid in Michigan, and under the

authority of the Consolidated Tank Line Co. v. Collier, 148 Ill., 259, should therefore be so held here. It would not appear to be like the assignment in Townsend v. Coxe, 151 Ill., 62, contrary to the public policy of the State. It would seem that as delivery of chattels by the rightful owner gives a *prima facie* title, the delivery of the goods in question by the company to Baars, by Baars to O'Brien and by O'Brien to Lettellier, all in the pursuance of a plain intent to carry out an original and lawful design of the company to prefer with their proceeds certain creditors, would pass, so far as the conflicting claims of the Gilliam Co. are concerned, the title to said goods irrespective of whether or not they were in Michigan at or after the appointment of the receiver. Instruction 7, however, left no question concerning such a delivery outside of Michigan to the jury.

In still another view the instruction is erroneous. If it should be conceded that the title to the chattels in Chicago did not pass to the receiver because he was in form an officer appointed *in invitum,* why could he not, without taking the goods into his possession in Michigan, convey to Lettellier a good title under the decree of the court? Independently of his appointment as receiver he was designated in the alternative by a court of competent jurisdiction in Michigan, as the person to carry out a decree of foreclosure sale of a valid chattel mortgage, where the mortgagee claimed to be in possession. If the goods in Illinois were included in the Michigan chattel mortgage, and especially if Baars was in possession of them, as mortgagee, could not the Michigan court with the parties before it, through a judicial sale by an officer specially designated to make it, convey the title to the chattels under the mortgage which it is admitted was a voluntary conveyance? The case of Rhawn v. Pearce, 110 Ill., 350, relied on by appellee, holds that a sequestration *in invitum* in favor of a purely statutory assignee or receiver does not pass title to property outside of the appointing jurisdiction, but we know of no case which holds that a competent foreign court cannot make a valid foreclosure sale, through its appointed agent or commissioner, of chattels once covered

Smith v. Berz.

by a mortgage within its own jurisdiction and sent to another by the mortgagee, or even of chattels covered in terms by the mortgage and of which the mortgagee has taken possession in such other jurisdiction.

The giving of this seventh instruction we therefore hold erroneous.

But it is argued by counsel for appellee in effect that even if such instruction does not state the law, the verdict and judgment should be upheld because the description of the property in Chicago, if said property is to be held included in the mortgage at all, was so vague and indefinite as to render the mortgage invalid as to it, in default of record in Illinois, and of possession, and that there is no competent evidence in the record that either the mortgagee, receiver or purchaser took possession of it.   The language by which it is alleged that the chattels belonging to the company in Chicago are described is certainly very general and we should be inclined to hold insufficient to identify and hold said property, if it had not been further identified and claimed by the mortgagee's taking possession of it.   But we do not agree with the proposition that there is no proper evidence in the record to show that such possession was taken.   We think the evidence clearly establishes the fact that the great bulk of the goods which were attached were not in Chicago at the time of the execution of the mortgage and that they were sent to Chicago thereafter by the trustee, the receiver and Lettellier, who were successively in possession of the business of the Cycle Company at Grand Rapids.   It would be useless in this opinion to collate the evidence to this effect, which has been thoroughly discussed in the respective briefs of the parties.   Jennings, Holland and Sligh made direct statements, which both the primary and secondary documentary evidence adduced clearly confirmed, inconsistent with any other state of facts.

It is not necessary for us perhaps to pass on the objection so strenuously urged to all the secondary evidence that the proper foundation in a search for the original documents had not been laid for it, because although cross errors are

assigned on its introduction, we could not disregard it in this investigation and affirm the judgment, as though no such evidence was in the record. Such is not the effect of the assignment of these cross errors. We can only, if the case is to be remanded, give effect to such assignment by instructions to the trial court. We do not, however, think the assignments are well made. It seems to us that a sufficient showing was made to justify the trial judge in the rulings which admitted the secondary evidence. Any detailed discussion of this would be superfluous, for at another trial the showing might be in either direction widely different.

Of defendant's Exhibit 22, purporting to be a list of the bicycles attached, it may be said that while the evidence as to the date of its preparation is by no means as clear as could be wished, a fair inference is that it might have been made at the time of the attachment and not a year afterward, as argued by appellee. By inspection of the record (rather than of the abstract) it appears that Jennings in answer to the question whether he could identify the goods attached, swore that there was a list made up *at the time of the attachment*. Sligh afterward testified that he made a request of Jones & Jennings for a list of all the wheels that were covered by the attachment, and received in reply Exhibit 22. Jennings further testified that Exhibit 22 was in his handwriting. While it would appear from the memorandum at its head that Sligh received it in 1898, it by no means follows that it was then made up. The best that can be said of it is that the date of its preparation is doubtful. But as before indicated, there are direct statements of witnesses that the goods attached were not in the Chicago store at the date of the mortgage. It is argued that the witnesses for the defendant were discredited by inconsistencies and indefiniteness in their testimony. Careful examination and consideration of it do not produce that impression on us, and we cannot avoid the conclusion that the evidence clearly shows that the property attached was almost all sent to Chicago after the mortgage was made and the trustee had taken possession of it, and that the special finding of the jury that the receiver

Smith v. Berz.

did not ship any part of it to Jones and Jennings in Chicago is entirely unwarranted.

But even the contrary view would not of necessity justify the verdict and judgment as we view the law. Possession of the goods in Chicago might, in our opinion, have been taken in this case by the mortgagee, the receiver or the purchaser (certainly by the mortgagee or the purchaser), without said goods ever having been in Michigan. The legal possession of property in the physical custody of factors or bailees may change by notice to the bailees of change of title, assented to by them and acted upon by their acknowledgment of a new agency. Such a change is claimed by appellant in this case, but by the rulings of the court the question whether such a change took place was entirely taken from the jury. By declining to give instruction 37 as asked and neglecting to express the essential proposition it contained by any modified form of it, the trial judge showed his apparent disagreement with the principle involved. We think also that even on the theory of the trial court, instruction 40 should have been given as more explicitly stating what he perhaps deemed involved in instruction 7. Instruction 10 we think misleading. We do not deem it necessary to discuss it, nor do we think it necessary, in the view which we take of the record in this case, that we should now decide whether or not instructions 33 and 35, which were refused, should have been given. The doctrines they express do not lack authority. Lowe v. Matson, 140 Ill., 108; Hodges v. Hurd, 47 Ill., 363.

Counsel for appellee contend that as against an attaching creditor, such change of possession as might be effectual as between the vendor, vendee and bailees, would not avail if unaccompanied by "outward, open, actual and visible signs," which they say did not exist in this case. This might well be if credit were obtained on the strength of the unchanged outward condition of things, but when no estoppel can be claimed because of the situation, we do not see the force of the proposition. Especially it lacks such force when, as in effect was the case here, notice in regular course has

been given the creditor of the alleged change of title before
the attachment.    It is urged that mailing in due course with
proper address is not evidence of any actual notice.    It raises
a *prima facie* presumption of reception, in our opinion.    If
the attaching creditor did receive notice of the receiver's sale,
and in pursuance of such sale the bailees after receiving
notice of it, actually held for the purchaser, the title having
actually changed, it would be highly unreasonable, in the ab-
sence of any estoppel in favor of the creditor, to hold him
unaffected by such change because of the lack of outward
signs.    So to hold would be to make the "outward sign"
superior to the "inward grace."

There is, of course, an aspect of the case in which such
absence of outward signs of change and the evidence intro-
duced and received of the use of the Cycle Company's name
after the alleged transfer of possession to Baars and after
the receiver's sale, are pertinent, material and competent
testimony.    It is related to the theory of appellee expressed
in its brief that the proceedings through which Lettellier
acquired his claim were all *mala fide,* and a fraudulent at-
tempt on the part of the Cycle Co. to rid itself of its debts.
If such a condition were proven, it would undoubtedly fol-
low, as counsel contend, that a verdict for appellee would
be justified.    But two things must be noted in relation to
this theory.    First, this verdict and judgment could not be
allowed to stand because of it, unless it was so clearly and
convincingly proven as to leave no room for doubt in our
minds, because under the instructions and rulings under
which this case was tried below, there can be no presumption
that the jury based their verdict upon it.    Secondly, the
proceedings being on their face regular, valid and effective
under the law, the burden of proving them undertaken and
carried through with a fraudulent intent is clearly on the
appellee.    That no such burden has been sustained by it, in
the evidence presented in this record, we think is evident.
The testimony of Sligh, so strenuously insisted on by appel-
lee, that the bank received none of the purchase price from
Lettellier, seems to us a mere inadvertence due to a miscon-

ception of the question asked him and speedily corrected when his attention was called to it. That the Cycle Company intended to prefer certain of its creditors, with its assets, to the exclusion of others, in the hope that its managers might thereafter reap in business and credit from those preferred a reward for the favor shown them, seems very probable, but in the absence of statutes to the contrary, which did not exist in Michigan when these transactions took place, there was nothing in the eye of the law fraudulent actually or constructively in such intention or the means by which it was carried out.

The judgment must be reversed and the cause remanded for a new trial. .

We do not think it necessary to comment more minutely on various points urged in relation to the admission of evidence and the instructions, for in another trial the identical questions are not likely to arise, and the general principles which we think govern the case have been expressed.

The instruction regarding interest we think was in accordance with the rule laid down by the Supreme Court.

At another trial it is possible that different or additional facts may be developed bearing on the rights of the parties. On this record as it stands, however, we think the plaintiff was entitled to only nominal damages, the costs of the replevin suit and attorneys' fees.

*Reversed and remanded.*