## M. J. Hawley v. The State Bank of Chicago, Receiver.

### Gen. No. 13.274.

1. INJUNCTION—*what confers jurisdiction upon court of this state to grant, against non-resident.* The entry of a general appearance by a non-resident against whom an injunction is sought in a court of this state, confers jurisdiction upon such court to grant such injunction.

2. INJUNCTION—*when does not lie at instance of receiver, to restrain prosecution of suit by creditor in courts of another state.* An injunction does not lie, at the instance of a receiver appointed in this state, to restrain a non-resident from prosecuting in the courts of another state an attachment proceeding against the effects of the insolvent.

Hawley v. The State Bank of Chicago.

3.   Injunction—*how far propriety of, affected by non-enforce-ability.*   The courts do not look with favor upon the granting of an injunction by the courts of this state which such courts would be without power to enforce.

Brown, J., dissenting in part.

Injunctional proceeding.   Appeal from the Circuit Court of Cook county; the Hon. Lockwood Honore, Judge, presiding.   Heard in this court at the March term, 1907.   Reversed.   Opinion filed May 27, 1907.

**Statement by the Court.**   This appeal is by one M. J. Hawley from an injunction *pendente lite* issued by a chancellor in the Circuit Court in the case of Buckingham and others against The Traders Insurance Company, on the motion of The State Bank of Chicago, a receiver appointed in said cause.   The receiver had filed in said cause a petition, hereinafter more particularly described, against said Hawley, and the injunction was an interlocutory or preliminary one granted pending the final hearing of said petition.   It restrained said Hawley, his servants, agents, etc., until the further action of the court, from taking any further steps or proceedings of any kind or nature as against the garnishees in the attachment suit of Hawley against The Traders Insurance Company pending in the Superior Court of the city and county of San Francisco, California.

The facts and proceedings leading up to this order were these:

On May 5, 1906, The Traders Insurance Company of Chicago had suffered severe losses by the earthquake and fire in San Francisco.   A majority in amount of its stockholders filed on that date in the Circuit Court of Cook county a bill of complaint against the company, alleging its insolvency and asserting that it had property and assets in various states subject to attachment and garnishment; that if a receiver were not appointed it would be subject to a multiplicity of suits in various jurisdictions, and that its net assets

would be unevenly and inequitably distributed. The bill therefore prayed that the company might be restrained from further prosecution of its business, that a receiver might be appointed to take charge of all its assets, to collect debts and property due it, to prosecute and defend suits in its name, and to do all other acts for the collection, marshaling and distribution of its assets.

It further prayed for a decree upon final hearing dissolving the company and providing for the distribution of its assets to its creditors, and for general relief.

The Traders Insurance Company forthwith answered the bill, admitting its allegations, and a receiver was appointed according to the prayer of the bill. A final decree was entered June 18, 1906, dissolving the corporation, subject to the Act of the General Assembly concerning the dissolution of insurance companies, and confirming the receivership, which, it was ordered, should "continue for the purpose of collecting, marshaling and distributing the assets of the defendant company and closing its concerns and settling its unfinished business, for all of which and all purposes incident thereto, jurisdiction" was "retained in the cause."

July 24, 1906, the receiver filed a petition in the cause, setting forth that one M. J. Hawley had brought an action at law for $38,000 in the Superior Court of California upon certain fire losses in San Francisco; that said Hawley had sued out an attachment or garnishment process from said California court and served it on a California agent of The American Fire Insurance Company of Newark, New Jersey, which was largely indebted to the Traders Insurance Company.

The petition denied knowledge of the justice of the specific claims made by Hawley against the Traders Insurance Company, but stated that on a certain policy issued to said Hawley proofs of loss had been filed

with the receiver, and that on a certain other policy, claimed in Hawley's action in California to have been assigned to him by the Vermont Marble Company, proofs of loss had been filed with the receiver by the Marble Company. On these facts it was claimed that said attachment suit of said Hawley was in violation of the rights of the receiver, and an order was prayed that unless the said Hawley should dismiss the said action and said attachment proceedings in California within five days after being served with a copy of the order, the said Hawley and. said Marble Company should be forever barred from sharing in the distribution of the estate in the pending Illinois cause, and that the claims already filed by the Marble Company and Hawley should be disallowed.

On the same day, July 24, 1906, an order was entered by the court in accordance with the prayer of this petition.

It appears by stipulation in the present cause that this order "was entered without any notice to said Hawley or the Vermont Marble Company, or to any person representing said Hawley or said Marble Company, and that at the time said order was entered neither Hawley nor the Marble Company, nor any one representing them, was in court, and that at no time has Hawley appeared in person before said court."

On August 6, 1906, a motion to vacate this order of July 24, 1906, was made by M. J. Hawley. This was renewed August 17, 1906, by a written motion, which was signed by "H. R. Pebbles, solicitor for M. J. Hawley, respondent." It assigned six different reasons for the vacation of the order, the sixth being that "the respondent by the levy of the attachment in said petition mentioned, acquired a valid lien upon the funds attached, superior to the rights of the receiver."

It appears by affidavit in the bill of exceptions in the present appeal, that at the time Mr. Pebbles filed this motion he was unaware that the averments in the receiver's petition heretofore described, that Hawley

had filed proofs of loss with the receiver, were not true, and believed that by the filing of such proofs of loss with the receiver, Hawley had made a general appearance in the cause and submitted to the jurisdiction of the court appointing the receiver far enough to enable such court to make orders concerning the allowance or disallowance of such claims. August 20, 1906, it would appear, Pebbles was informed of the fact, thereafter set up in the amended and supplemental petition of the receiver, to be described, that the proofs of loss in question had never been filed with the receiver, but had been addressed to and filed with the Traders Insurance Company itself.

October 3, 1906, there was a hearing by the court of the motion of Hawley to vacate the order of July 24, 1906, and of a cross-motion of the receiver for an order enjoining Hawley from proceeding in the California suit. An order was thereupon entered that Hawley have leave to plead, answer or demur to the petition of July 24, 1906, upon which the order of July 24, 1906, was based, in all respects as though such plea, answer or demurrer had been filed prior to July 24, 1906. It was also ordered that pending the disposition of the motion of Hawley and the motion of the receiver, Hawley should refrain and desist from taking any steps or proceedings in the California suit.

October 13, 1906, a general demurrer was filed by said Hawley to said petition of July 24, 1906, and on November 1, 1906, so much of the order entered on October 3rd as enjoined Hawley was vacated.

February 11, 1907, in pursuance of leave of court, the receiver filed an amended and supplemental petition against Hawley as respondent, reciting, among other things, that in the receiver's petition of July 24, 1906, the statement that proofs of loss had been filed by said Hawley and the Vermont Marble Company with the receiver, was a mistake; that the said proofs of loss had been filed with the Traders Insurance Company.

The petition also alleged that in the attachment suit in California Hawley had garnisheed many insurance companies indebted to the Traders Co., besides The American Fire Insurance Company of Newark, and that the pendency of the said cause in California interfered with the collection of a very large amount to become due from said companies; that although notice had been served on Hawley, or his attorney, of the order of July 24, 1906, Hawley had not dismissed the said attachment suit; that for the purpose of probating the estate, the receiver had entered its special appearance in the attachment proceeding in the Superior Court of California, and moved to dismiss said proceeding and to quash the service of process therein; that such motions were both denied by said Superior Court; that on August 4, 1906, M. J. Hawley entered his general appearance in the Illinois cause and submitted himself to the jurisdiction of the court, and had from time to time since appeared therein generally and made motions; that after this entry of Hawley's appearance in the Illinois court, and after the denial of the receiver's motions to dismiss and quash in the California case, the receiver directed counsel to enter the appearance of The Traders Insurance Company in said California case; that the company demurred to the complaint of Hawley therein, but that the receiver had never entered an appearance or submitted to the jurisdiction of the Superior Court of California.

The amended and supplemental petition then prayed that upon the hearing thereof the said Hawley might be perpetually enjoined from prosecuting his attachment suit in California, or if the court should be of opinion that it ought not so to enjoin the prosecution of that action, an order should be entered directing that unless Hawley should dismiss his proceedings in California, he be barred in the Illinois case from sharing in the distribution of the assets of The Traders Insurance Company, and that pending the hearing of this amended and supplemental petition, the said Haw-

ley be restrained from proceeding with his California suit.

At the hearing of the motion made for the said preliminary injunction April 11, 1907, the matters hereinbefore set forth were by affidavits and stipulation brought to the attention of the chancellor. It was also by affidavits shown that Hawley was never a resident of the State of Illinois, but for ten years had been a resident of California, and that he had not been, within a year preceding the hearing, within the limits of the State of Illinois. It was also shown by affidavits that the appearances of Hawley in the Illinois case were limited to those hereinbefore specifically set forth, and to motions by his solicitors on several occasions to vacate the orders enjoining him, and that Hawley did not enter any appearance in the cause on August 4, 1906 (as stated in the petition), and had never asked any relief of the Illinois court except the vacation of the orders against him.

After this hearing the chancellor entered the interlocutory injunction order first above set forth, from which this appeal is duly prosecuted under the statute.

HENRY R. PEBBLES and EUGENE H. GARNETT, for appellant; GEORGE C. SARGENT, of counsel.

ROSENTHAL & HAMILL, for appellee; CHARLES H. HAMILL, of counsel.

PER CURIAM. In our opinion the interlocutory injunction appealed from should be dissolved as improvidently and erroneously granted.

It is apparent that if a permanent injunction ought not to be granted on the petition involved, no preliminary one should be ordered. Such a permanent injunction is, the majority of the court think, prohibited by principle, expediency and authority. We are agreed in the belief, however, that the Circuit Court had the jurisdiction and the legal power to enter the order complained of. This makes it useless to comment upon

the arguments made or suggested on either side orally or in the printed briefs concerning this element in the case. Whatever the misapprehension may have been under which the appellant's counsel may have labored concerning the appellant's previous appearance in the cause, it remains the fact that when appellant's general appearance was for the first time entered in it on August 6, 1906, the court was thereby given jurisdiction and power to determine upon the relative rights of the receiver and appellant under the petition then on file in the cause, and under the amended and supplemental one which thereafter took its place. It will not do to say that had the receiver in his original petition not made the mistaken statement that proofs of loss had been filed with him, the appellant would not have appeared. It was, after all, within the knowledge of the appellant whether or not he had filed his claim with the receiver, and his solicitor and counsel must be, in the eye of the law, credited with the same knowledge.

But that the court had jurisdiction and power to make the order of injunction does not imply its propriety or its freedom from error.

On principle it is objectionable, because it is the declared policy of the State of Illinois in similar cases to guarantee to its own citizens the right to pursue their remedies in the courts of Illinois to the exclusion of the claims of all foreign receivers or assignees. As we said in Smith v. Berz, 125 Ill. App. 122, p. 131, citing to the proposition Heyer v. Alexander, 108 Ill. 385, and comparing it with other cases on the same general subject in Illinois: "Neither a voluntary assignee nor one purely statutory from a foreign jurisdiction, nor a receiver appointed by a foreign court, can successfully hold property of which he has not obtained possession in the jurisdiction appointing him, against attaching creditors of the insolvent estate who are citizens of Illinois."

Why, then, should Illinois seek to deny to citizens

of California the same right in the courts of California that it insists on retaining for its own citizens in the courts of Illinois? So to do is to violate the spirit, at least, of our national constitution, and to make an unwarranted distinction between the citizens of different states placed in precisely the same situation. It is not to the purpose to say that the courts of Illinois will prevent its own citizens from pursuing in other states remedies which are open to the citizens of those states under this rule, for that exercise of power depends on an entirely different principle, which recognizes the propriety of the tribunals of each state preventing an evasion of the law of that state by its own citizens, who owe it obedience and allegiance.

The reason in expediency for forbidding such an injunction as the present one is at least equally strong.

The injunction cannot be enforced if granted. Already the California court has repudiated the idea that comity demands of it the recognition of the receiver's claims as against Hawley's rights to pursue his remedy in it.

Hawley is not in this jurisdiction personally; he has, so far as appears, no property here; he has not been here for many months at least, and he is unlikely to come so long as the injunction is in force against him and he is violating it. There is no power which could be successfully invoked to carry out the mandate of the court. Why should a court of Illinois issue a *brutum fulmen*—a bull against the comet? Such an order, peremptory in its tone, but foredoomed in the knowledge of the judge who issues it, the parties it purports to affect, and the counsel who procure or oppose it, to disobedience and disregard, certainly does not add to that respect for the law and for the power and dignity of the courts which it is desirable to maintain and increase.

The authority of the only decided cases cited to us, which are strictly in point, is on the same side of the question. It is conceded by counsel for the appellee

that the case of Carron Iron Company v. Stainton, 5 House of Lords Cases, 415, is distinguishable from the one at bar only in minor considerations, not in principle affecting the reasoning of Lord Chancellor Cranworth, who expressed the opinion of the majority of the Law Lords thus: "The Company" (*i. e.* the Scotch Company in question) "has real property in London and Liverpool and in the county of Cumberland. The question is whether this connection with England makes it fit that the courts should interfere to prevent the appellants from exercising their right of proceeding in the tribunals of their own country. I confess that I can discover no foundation for such a proposition. The circumstance that the appellants have property in this country which may be attached or sequestered enables the court to make any injunction it may issue effectual, but I do not see on what principle it can make the issuing of an injunction just or expedient, if it would have been unjust or inexpedient supposing there had been no property capable of being sequestered." * * * "These decisions" (*i. e.* certain decisions cited in argument) "can only show by way of analogy (if indeed they do afford such an analogy) that service on the agent of the Carron Company in London would be good service on the company itself, though out of the jurisdiction. But they have no bearing on the question whether the equity sought to be enforced is one which can properly be applied toward a foreigner domiciled abroad. On these grounds I think that the court below ought not to have granted an injunction."

When the case went back to the Master of the Rolls, Sir John Romilly, it was decided that the applicability of the judgment of the House of Lords was not affected by an alleged submission of the appellants to the English Courts by proceedings begun in them in the meantime (Stainton v. Carron Iron Company, 21 Beavans Rep. 152), and this decision going to the Court of Appeals, Stainton v. Carron Iron Company,

26 L. J. Rep. N. S. Ch. 332, was there affirmed, the Lord Chancellor saying: "I conclude that it must be a very strong case which would justify this court in restraining a foreigner domiciled in another country from proceeding to obtain the payment of debts according to the law of the country in which he is domiciled."

But more controlling on us than this case in the highest tribunals of Great Britain and the similar decisions in Crofton v. Crofton, 15 Law Rep. Ch. Div. 591, is the decision of the Supreme Court of Illinois in Western Union Telegraph Company v. Pacific and Atlantic Telegraph Company, 49 Ill. 90. In that case, although the Pacific and Atlantic Telegraph Company, a foreign corporation, had come into the courts of Illinois seeking relief in a matter to which the cross-bill of the Western Union Telegraph Company was plainly germane, the court refused the prayer of the cross-bill for an injunction against the Pacific and Atlantic Telegraph Company, forbidding it to attach its wires to the poles of the Western Union Telegraph Company in the State of Indiana, saying:

"The jurisdiction of our courts is only co-extensive with the courts of our state. They cannot legally send their process into other states and jurisdictions for service. If the exercise of such a jurisdiction were attempted and an injunction granted, and it should be disregarded by persons in Indiana, this court would be powerless to enforce the injunction by attachment, and hence the effort to exercise such a power would be readily defeated. But we are of the opinion that neither law nor comity between distinct state or national organizations sanctions the authority of one such body to exercise jurisdiction over the citizens and their property while both are beyond the jurisdiction of the tribunal in which the proceeding is pending. The courts of this state cannot restrain citizens of another state, who are beyond the limits of this state, from performing acts in another state or

elsewhere outside of and beyond the boundary lines of this state. Any other practice would necessarily lead to a conflict of jurisdiction.''

The opinion in Barry v. Mutual Life Ins. Co., 2 New York Supreme Court Rep. 15, shows the Supreme Court of the State of New York in accord with this doctrine. So too, we think, were the Superior Court of New York City in deciding the case of Hammond v. Baker, 3 Sandford, 704, and Mr. Justice Brown, afterward of the Supreme Court of the United States, when in the U. S. Circuit Court for the Eastern District of Michigan, he rendered the opinion in Kelley v. Ypsilanti Dress-Stay Manufacturing Company, 44 Federal Reporter, 19.

We have fully in mind the distinctions which counsel for appellee insist exist between each of these cases and the one at bar, but they are forced to the statement that in the Illinois case the reasoning is, in their opinion, unsound, a proposition in which, as is shown by what we have already said, we do not concur, and which could hardly be allowed to govern our decision if we did. It is true that in the most technical sense in which they might be understood, the words which precede the excerpt we have quoted from the opinion —''This motion must be denied for want of jurisdiction,'' are not consistent with our holding about the power of the court in the case at bar, but the words were evidently not used in that strict sense. They mean, as the further explanation shows, that the courts of Illinois could not without error exercise such a power.

Neither the distinction argued from the fact that the Western Union Telegraph case in Illinois dealt with tangible property in the State of Indiana, nor the one sought to be deduced from the fact that the New York cases involved a proposed injunction against the prosecution of an action against the principal defendant instead of an attachment of choses in action in such a suit, commends itself to us. The principle

and reasoning of the cases cited seem to us to apply to the case at bar as strongly as though these differences did not exist. Our judgment, therefore, is that the order of the Circuit Court be reversed.

*Reversed.*

MR. PRESIDING JUSTICE BROWN dissenting.

I cannot agree with the majority of the court in this case. I have no criticism or comment to make on the reasoning by which they support their decision, but from a different point of view, there seem to me insuperable objections to the hypothesis that the conclusion to which they have come is in consonance with the policy of the State of Illinois concerning the relations of its own citizens to those of other states in controversies in its own courts.

The full statement of the law of Illinois in relation to the powers of foreign receivers in this state, as I conceive it to be from a comparison of all the cases on the subject decided by the Supreme Court of Illinois, is to be found in the opinion in Smith v. Berz, 125 Ill, App. 122, pp. 130-131, from which the opinion of the court quotes a single sentence. The whole statement is this: "A foreign receiver, or a foreign assignee, whose office and power are statutory and to whom no voluntary conveyance has been made, can not effectively convey real estate in Illinois, nor can he obtain the assistance of the courts of Illinois to secure the possession of chattels in this jurisdiction. If he has given no notice of his claim to debtors of the estate residing in Illinois, before a garnishment is made, he cannot defeat such garnishment by attaching creditors, either resident or non-resident of Illinois. But if without the aid of the Illinois courts, he has taken actual possession of chattels in Illinois, or has notified debtors of the estate residing in Illinois of his claim before an attachment is made, his claim (if it results from laws or proceedings not contrary to the public policy of Illinois) will be recognized and protected

against such attachment *unless the attachment is by a citizen of Illinois.*

"As distinguished from a receiver or assignee purely statutory and appointed *in invitum,* a foreign voluntary assignee for the benefit of creditors, may have, in proper cases, the aid of Illinois courts to secure possession and control of property in Illinois conveyed to him, and *as against foreign attaching creditors,* he will be protected in his right to all the property in Illinois of which he does obtain possession. But neither a voluntary assignee nor one purely statutory from a foreign jurisdiction, nor a receiver appointed by a foreign court, can successfully hold property of which he has not obtained possession in the jurisdiction appointing him, against attaching creditors of the insolvent estate *who are citizens of Illinois.*"

This statement of the law of Illinois shows how carefully the courts of Illinois protect the claims of the citizens of Illinois as compared with claims equally valid in justice and equity of citizens of other states, and to what extent they prefer the citizens of Illinois in their administration of the law in relation to receiverships. When, with this as a starting point, we proceed to the propositions that the courts of Illinois would, as it is conceded by counsel for appellants they would, issue an injunction exactly like the one involved here against any citizen of Illinois who should bring in California such an attachment suit as the appellant brought here (Sercomb v. Catlin, 128 Ill. 556), and that this would be no violation of the Federal Constitution (Cole v. Cunningham, 133 U. S. 107), the conclusion is irresistible to my mind that the legal policy of the State of Illinois is to treat the citizen of California no better in this regard than the citizens of Illinois. If he voluntarily comes into the jurisdiction of the courts of Illinois, they will, so far as their power goes, deprive him of any advantage he may, by reason of his citizenship in another state, have over the citizens of our own state. It seems to me that in this contro-

versy the receiver must be held to represent the rights and interests of the citizens of Illinois, intermingled, as they certainly are, however, with the rights and interests of citizens of many other states.

I do not think the *ratio decidendi* of Sercomb v. Catlin, *supra,* is in the allegiance which citizens of Illinois are bound to render to her laws, institutions and courts, and from which the citizens of California are excused, as appellant argues, but, rather, in the very tender regard of the courts of Illinois, not based on altruism, or patriotism, but developed purely by local self-interest, for the pecuniary and personal rights of the citizens of Illinois.

It is true that the injunction granted cannot be enforced except in Illinois. But it certainly is an advantage to the citizens of Illinois interested in the receivership to place such a prohibition on the pursuit of an unequal advantage in California as will put the person insisting on it in contempt of the Illinois court if he proceeds in California and thereby shut him off completely, unless he purges himself from that contempt, from participating in the results of the Illinois receivership, nor can it be judicially presumed that no other means of punishing the violation of the injunction would ever be available within the limits of Illinois.

The cases cited in the opinion of the court are undoubtedly in point, but the English cases arose where no such system of inter-relation between the citizens of different states exists, as here, and where no such complex theory of the law concerning receiverships and claims against estates in the custody of the law has been declared as is indicated in the quotation made from Smith v. Berz, *supra.*

The authorities from other states are not necessarily controlling. The policy of the State of Illinois is declared by its own courts.

The case of Western Union Telegraph Company v. The Pacific and Atlantic Telegraph Company, 49 Ill. 90, remains. It is the most serious difficulty I find in

the maintenance of the views I express, but it was decided in 1868, long before the policy of the state was declared as to the rights of its own citizens in insolvent and other law administered estates by the series of cases cited in Smith v. Berz, *supra,* beginning with Rhawn v. Pearce, 110 Ill. 350, and ending with Townsend v. Coxe et al., 151 Ill. 62, and also long before in Sercomb v. Catlin, 128 Ill. 556, the Supreme Court had decided that it was proper to enjoin a citizen of Illinois from pursuing a remedy against such an estate in a foreign tribunal. I cannot think, therefore, that it should now be considered controlling in the decision of cases like the one at bar.

The argument *ab inconvenienti* in the present case is very strong. It should not by itself, perhaps, be held to be of chief importance. But in connection with the considerations I have set forth, it leaves me in no doubt that the order granting the injunction should have been affirmed.